[Civ. No. 3114.   First Appellate District, Division One.—December 31, 1919.]

# HOWARD B. SMITH, Appellant, v. CENTRAL AND PACIFIC IMPROVEMENT CORPORATION (a Corporation), Respondent.

[1] CORPORATIONS—INTERIM CERTIFICATES EVIDENCING BONDS—ACCEPTANCE OF PAYMENTS ON CERTIFICATES — WAIVER OF BONDS BY RECORD OWNER.—Where the record owner of interim certificates, which have been issued as evidence of certain bonds to be issued not later than a given date by a corporation, is a director of said corporation and concurs in the opinion of his codirectors that it is to the interest of the corporation not to issue the bonds but to pay in cash, from time to time as it is able, the face thereof, and thereafter, but prior to the time payment would have been due had bonds been issued, the corporation, without knowledge of the fact that the certificates have been transferred to another, makes certain payments on account to such record owner, who pays the same over to the assignee of the certificates, and the latter accepts the same without objection, the issuance of such bonds is waived.

[2] ID.—EQUITABLE MAXIM AS TO THAT WHICH OUGHT TO BE DONE—WAIVER—CONSIDERATION.—The maxim, "Equity regards as done that which ought to be done," is not applicable where a party has for a consideration waived that which it is claimed ought to have been done.

[3] ID.—ASSIGNMENT OF CERTIFICATES—WANT OF NOTICE—PAYMENTS TO RECORD OWNER—ESTOPPEL—ISSUES—FINDINGS.—Where in an action to recover the value of certain bonds which were to have been issued by the defendant corporation, and which were evidenced by certain interim certificates, the court finds that the corporation, at the direction of the record owner thereof, made certain charges against such certificates in good faith and without knowledge of facts or circumstances sufficient to put it upon inquiry as to the assignment of such certificates, it is immaterial that the court finds an estoppel against such assignee different from that pleaded in the defendant's answer and outside of the issues.

[4] ID.—CONDITIONAL TENDER OF FURTHER PAYMENTS—INDORSEMENT UPON CERTIFICATES OF PRIOR PAYMENTS.—Such corporation, having made such prior charges against the interim certificates in good faith and without knowledge of their assignment, had a right to demand, as a condition concurrent with the making of further payments thereon, that the certificates be brought in for indorsement thereupon of the prior payments made and credits given.

[5] ID.—ADVANCE PAYMENT OF INDEBTEDNESS—WAIVER OF PREMIUM.—
Where the issuance of bonds is waived, the condition to have been
contained in such bonds, but which is not contained in the interim
certificates, giving the corporation after a given time the right to
call the bonds before maturity by paying an additional five per
cent upon the principal of the bonds, is also waived.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   John W. Shenk, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Frank F. Oster for Appellant.

Arthur Wright, Hunsaker, Britt & Edwards and Samuel
Poorman, Jr., for Respondent.

RICHARDS, J.—The plaintiff sued for sixty-five thou-
sand dollars, and interest, alleged to be due to him as the
value of certain bonds which the defendant had under-
taken to issue by the terms of certain interim certificates
made and given by it to one W. W. Wilcox and assigned
by Wilcox to the plaintiff.  The plaintiff had judgment for
the sum of $38,582.78 as principal and $4,331.04 as inter-
est, the difference between the sum of these amounts and
the amount sued for having been by the defendant credited
to Wilcox in extinguishment of certain obligations due
from him and one D. Johnston and charged to said certifi-
cates before receiving notice of such assignment.  The plain-
tiff appeals.

The facts may be summarized as follows: The defendant
was organized by several persons who at the time were mem-
bers of an improvement club in the city of Los Angeles,
known as the South Main Street Improvement Association,
among them being R. H. Raphael, Andrew Beyrle, J. M.
Carpenter, their attorney, Arthur Wright, and the secretary
of the club, C. R. McKeon.  These persons were interested
in improving the character of the business property in the
locality indicated by the name of the club, and the imme-
diate object of the organization of the defendant as a cor-
poration was the acquisition of a parcel of land, 150 feet
square, situated at the corner of Main and Washington
Streets in said city, and upon which there was at the time

a one-story building, of which property the plaintiff was the owner. It was thought desirable by the persons mentioned to erect upon this lot a substantial business block of a character to enhance the value and desirability of property generally in its immediate neighborhood. W. W. Wilcox and D. Johnston were acquaintances of long years' standing of the plaintiff, they having had business relations together in the city of Colton, of which the plaintiff was still a resident, Wilcox and Johnston having removed to Los Angeles. Mr. Beyrle owned property adjoining that of the plaintiff, and formed the acquaintance of Wilcox and Johnston upon an occasion when the latter were attending to some business in connection with the plaintiff's said property. These three gentlemen got into conversation, and the project of acquiring the plaintiff's property for the aforesaid purpose was brought up and discussed, as a result of which Wilcox undertook to see the plaintiff and find out on what terms it could be acquired. He did so, and received an authorization from the plaintiff to negotiate a sale of his property for eighty thousand dollars of six per cent serial bonds to be issued by the proposed corporation when organized, said bonds to be a first mortgage upon the property, including the proposed improvements, the purchaser also to assume an existing mortgage indebtedness thereon of forty-five thousand dollars. It was also understood between the plaintiff and Wilcox that the latter could retain for himself any excess over the price mentioned that he might obtain from the purchaser. Wilcox thereupon wrote a letter, dated February 7, 1912, to Mr. Raphael, who was the leading spirit in the proposed enterprise, and who, upon the subsequent organization of the corporation, became its president, said letter being in the following terms: "Dear Sir:—

"About one year ago Mr. Smith quoted . . . a price of $900 per foot for his lot on Main and Washington, that being the cost to him, taxes and interest included. He later agreed to take $850 per foot. He would not entertain a proposition for bonds or stock. A few weeks ago he requested me to examine the building and determine on the proper front. While there I met Mr. Beyrle who told me of the project to build and issue stock and bonds. I favored the enterprise and endeavored to interest Mr. Smith,

and as the result of several interviews I am prepared to state that a deal can be made with Mr. Smith as follows: As settlement buyers are to pay mortgage of $45,000 and issue $82,500 in 6% bonds, interest to begin January 1st, 1913; also $10,000 in stock.

"Yours truly,

"W. W. W."

This letter led to negotiations between Wilcox and Raphael, as a result of which, on February 14, 1912, Wilcox addressed another letter to him, reading as follows:

"Dear Sir:—

"Referring to conversation had with you recently regarding Main and Washington property, wherein you state that your people insisted on bonds drawing interest from July 1st, 1913, instead of January 1st, 1913, I find I am unable to meet this request as Mr. Smith insists upon the bonds he takes drawing interest from January 1st, 1913, thereby bringing the first semi-annual payment due July 1st, 1913.

"I now have full power and authority in way of a signed option from Mr. H. B. Smith for the handling of his property, and am in a position to renew the offer made you on the 7th inst., viz.: As settlement buyers are to pay mortgage of $45,000, and issue $82,500 in 6% serial first mortgage bonds, interest to begin January 1st, 1913, also $10,-000 in stock. Said bonds to be based upon not over 50% of the valuation of the property including proposed improvements.

"Yours truly,

"W. W. WILCOX."

A few days later the following paper was executed by Wilcox, Raphael, Beyrle, and Carpenter:

"For a valuable consideration by me received, the receipt of which is hereby acknowledged, I hereby agree to convey the following described real estate in the city of Los Angeles, California: (Here follows description of plaintiff's property.) To Andrew Beyrle, J. M. Carpenter and R. H. Raphael, or to any corporation or person or persons that they may designate, in accordance with the attached letter addressed to R. H. Raphael and executed by myself and dated February 14, 1912, all to be done upon their demand;

a deed for same to be deposited in escrow when they demand. This matter to be escrowed within four months.

"In witness whereof I have hereunto affixed my signature this 19th day of February, 1912.

"W. W. Wilcox.

"We accept above:

"R. H. Raphael,

"Andrew Beyrle,

"J. M. Carpenter,

"As Agents of a Proposed Corporation."

The letter referred to as attached to said writing is the one immediately above set out.

As a step in carrying out the terms of this paper, Attorney Wright prepared a deed from the plaintiff to Wilcox and another from Wilcox to Raphael, Beyrle, and Carpenter as therein provided, but upon the objection of Johnston (who as a friend of the plaintiff sought to protect his interest) to the title to the property going to these individuals, these deeds were not finally executed and delivered.

Raphael, Beyrle, and Carpenter, with the assistance of Arthur Wright, their attorney, proceeded with the organization of the defendant, the organization being completed within a brief interval. In the meantime the plaintiff, apparently in order to facilitate the sale of his property to the defendant (he being at this time a resident of Colton), made a deed thereof to Wilcox. At the next meeting between Wilcox and the organizers of the corporation and their attorney this transfer to Wilcox was communicated to those present, and, according to the testimony of Beyrle, the following occurred with reference thereto: "At the meeting that we organized the question was brought up as to closing that option, and Mr. Wilcox arose, and he says: 'I own that property now; I have a deed to it and you can do business with me; you don't have to pay any attention to the option.' And Mr. Wright got up and he says: 'That simplifies matters materially. We can fix that up now on a basis that we can go ahead.' " Wilcox thereupon made a deed of the property to the defendant and placed it in escrow, to be delivered upon receipt by the escrow-holder for the account of Wilcox of ten thousand dollars par value of the capital stock of the defendant fully paid, and eighty-two thousand five hundred dollars par

value six per cent first mortgage twenty-year gold bonds of said corporation, said bonds prior to their creation and issuance to be evidenced by a temporary interim certificate. This certificate was issued on April 10, 1912, and by it the defendant promised and agreed to proceed to authorize, create, and issue its said corporate bonds, the same to be secured by a deed of trust constituting a first lien or mortgage against certain real property, including that thus acquired by the defendant. Between that date and May 8, 1912, the defendant, at the request of Wilcox, issued to him, in lieu of said certificate for eighty-two thousand five hundred dollars, five identical certificates except as to the amount of bonds called for, one being for two thousand five hundred dollars par value and the other four for twenty thousand dollars each, and these latter, evidencing the defendant's obligation to issue an aggregate of eighty thousand dollars of its said bonds, were on said eighth day of May, 1912, assigned by Wilcox to the plaintiff, but neither the plaintiff nor Wilcox notified the defendant of said assignment.

The bonds called for by these interim certificates were to be issued not later than six months from the date of said certificates, but when that time arrived it was the consensus of opinion of the directors of the corporation (of which Wilcox was one) that it was to the interest of the corporation not to issue said bonds, but to pay in cash from time to time as it was able the face value thereof. Accordingly, on January 10, 1913, at a time when the first payment of interest upon the bonds called for by the interim certificates was not yet due, it paid to Wilcox on account of the principal of said bonds the sum of ten thousand dollars, and on the 30th of the same month paid to him the further sum of five thousand dollars, which amounts Wilcox paid over to the plaintiff, who accepted the same apparently without objection. The defendant also between that time and February 3, 1914, paid to Wilcox the interest accruing upon said bonds. In February, 1914, the defendant, being in need of money, the question was discussed at a meeting of its board of directors at which Wilcox was present. It was resolved to immediately call upon the company's stockholders for the payment of balances due upon their subscriptions, and also to make an active effort

to collect amounts due from other debtors. At this time Wilcox was indebted to the defendant in the sum of $10,-794.93, and at said meeting he requested that this amount be charged against the said interim certificates. He also at the same time directed that the sum of $7,664.03 due from Johnston to the defendant be also · charged against them. These amounts were so charged accordingly, and the several items of indebtedness from these two gentlemen to the corporation were canceled. In November of the same year Wilcox and Johnston having subscribed to a further issue of stock by the defendant, and being indebted on account thereof in the sums of $2,394 and $2,014, respectively, these amounts by the direction of Wilcox were charged against said certificates; and in February, 1915, Wilcox and Johnston being respectively indebted to the defendant in the sum of $2,012 and $772 for assessments upon capital stock of the defendant owned by them, these amounts by direction of Wilcox were also charged against the said certificates. In addition to these credits to Wilcox and to Johnston at the direction of Wilcox, the defendant also paid to the latter further sums representing interest on the balance due upon said certificates, and also, at his request, made the amounts of these last payments equal to the respective sums which would have been due as such had the above-mentioned charges against the certificates not been made, Wilcox representing that he needed these extra amounts, the effect of these payments being to still further reduce the amount of the principal of the obligations. On October 6, 1915, Wilcox notified defendant of the assignment by him to the plaintiff of the interim certificates.

In its findings the trial court declared that Wilcox, the obligee named in each of said interim certificates, and with whom at all times prior to October, 1915, the defendant dealt as the owner thereof and as the sole person from whom moved the consideration therefor, waived the authorization and creation by defendant of its corporate bonds and the execution of its deed of trust to secure the same; that defendant in good faith accepted such waiver and in reliance thereon made payments to Wilcox; that the defendant, prior to October 6, 1915, had no notice of the assignment to the plaintiff by Wilcox of the several interim certificates, nor· notice or knowledge of such facts or cir-

cumstances as would put a reasonably prudent man upon inquiry respecting such assignment or the actual ownership of said certificates, but that, on the contrary, at all times prior to said date the defendant was informed, and in good faith believed, that Wilcox was the holder and owner of said certificates. The court also found that the plaintiff had no knowledge prior to February 2, 1916, that Wilcox was representing to the defendant that he was the owner of said interim certificates, or that the defendant was making payments to Wilcox on account of said certificates other than of interest and the first two payments of ten thousand dollars and five thousand dollars respectively, or was canceling obligations at the request of Wilcox and charging them against the principal of said certificates, but that the plaintiff did not at any time prior to February 2, 1916, notify defendant that said certificates had been assigned to him; and it found that the plaintiff, in failing to notify defendant of said assignment, misled the defendant and permitted Wilcox to mislead the defendant at all times prior to October 6, 1915, into the belief that Wilcox was the sole and absolute owner of said certificates, and that in so doing he was grossly negligent. It also found that prior to February 28, 1916, the defendant tendered to plaintiff on account of said certificates the sum of $16,868.62 and demanded the surrender of such one or more of said certificates as should, by the application of said sum to the payment of the amounts due upon one or more thereof, be fully discharged and paid, but that the plaintiff refused to accept said amount. The amount of the judgment in plaintiff's favor was for the sum sued for, less the charges against the certificates made at the direction of Wilcox. It is this difference which causes plaintiff's dissatisfaction with the judgment and upon which he bases his appeal.

The first and principal contention of the appellant is that the finding of the trial court that the defendant made the aforesaid charges against the said certificates in good faith and without knowledge of facts or circumstances sufficient to put it upon inquiry as to the assignment by Wilcox to the plaintiff of said certificates is unsupported by the evidence.

The case upon both sides has been presented at considerable length and with conspicuous ability, and we have

given to it the careful examination which its importance deserves. From such study we have reached the conclusion that this finding of lack of notice on the part of the defendant is supported by the evidence. It is true there are facts which, standing alone, pointed clearly to the ownership of this property by the plaintiff, and that the proceeds of the sale belonged to him and not to Wilcox. As instances of these we may refer to the fact that it was known to the persons who organized the defendant, and who upon its organization became its officers and directors, that the plaintiff was the owner of the property at the inception of the negotiations for its purchase; that he had authorized Wilcox to negotiate for its sale; that Wilcox a few days after having agreed upon the terms of a sale to the defendant produced a deed to himself of the property without apparently having the means to pay for it except through the consideration which the defendant itself was to pay; that after the consummation of the transaction and the issuance to Wilcox of one interim certificate in the amount of eighty-two thousand five hundred dollars, he, at the request of Mr. Raphael, the president of defendant, invested two thousand five hundred dollars in an enterprise in which said president was interested, and that during the conversation between them ensuing upon such request Raphael expressed the opinion that Wilcox was going to make a good deal of money out of the sale of plaintiff's property to the defendant, whereupon Wilcox replied that only two thousand five hundred dollars of the interim certificates would go to him, following which Wilcox surrendered the single certificate for eighty-two thousand five hundred dollars, and had issued in its place five certificates—four for twenty thousand dollars each and one for two thousand five hundred dollars, which last he used for the purpose of making the investment invited by Mr. Raphael. There are other facts occurring later which, if uncontradicted, might or should lead a prudent person to make the inquiry suggested, but the fact that they were contradicted by other testimony precludes their consideration by this court. But, as offsetting the circumstances recited, there were the facts that the title to the property when taken over by the defendant was actually in Wilcox's name, and his assurance to the persons organizing the corporation and their attorney that they

could henceforth deal with him as the owner and take no further notice of the option theretofore given to them (which option had been given by Wilcox under his authorization from the plaintiff) ; that the interim certificates were issued in the name of Wilcox; that he did not inform the defendant of his assignment thereof to the plaintiff, and that the plaintiff did not do so; that during a period of almost four years after the transaction was closed the interest upon the amount due, together with payments of principal, were made to Wilcox who, at all times up to October, 1915, in his dealings with the defendant either actively asserted ownership of said certificates or allowed the defendant to rest under the belief that he was such owner. It is to be remembered that the plaintiff has not based its claim against the defendant upon the fact of his ownership of this property and his sale of it to the defendant through his agent Wilcox. He has preferred to base his cause of action upon the assignment made by Wilcox to him of the interim certificates on May 8, 1912, and the evidence touching all preceding matters can only be regarded for the light it throws upon the question whether the defendant had notice of the plaintiff's ownership of the certificates through such assignment. We think that the circumstances in the case from which Wilcox's ownership of these certificates could have been legitimately inferred counterbalance those circumstances which indicated that the ownership was in the plaintiff, and that the trial court, having weighed one set of facts against the other and arrived at a conclusion, this court will not interfere with it.

The next contention of the appellant is predicated upon an equitable maxim which he contends should be given application to this case, namely, ''Equity regards as done that which ought to be done.'' Its application to this appeal is this : that the interim certificates called for the issuance of bonds; that such bonds (appellant asserts) when issued would be negotiable instruments; that the title to a negotiable instrument passes by delivery; that therefore defendant could not safely make payments upon the interim certificates without assuring itself that the recipient of the payments had the certificates in his possession, and that had it done so it would have discovered the plaintiff's ownership of them.

The respondent answers this contention by pointing out, first, that the bonds in this case, if issued, were to be secured by a mortgage; that a bond so secured is not a negotiable instrument (*Meyer* v. *Weber,* 133 Cal. 681, [65 Pac. 1110]; *National Hardware Co.* v. *Sherwood,* 165 Cal. 1, [130 Pac. 881]); that the issuance of the bonds was (and the court so found) waived by Wilcox, and that upon the strength of such waiver the respondent paid out large sums of money; and finally, that the certificates themselves were not negotiable and could pass only by assignment. [1] Without considering in detail all of these points, we think the respondent is clearly right in its contention that the issuance of the bonds was waived by Wilcox; and if so, [2] there is no room for the application of, the equitable maxim invoked, for equity will not regard as done that which a party has for a consideration waived.

[3] The appellant also makes the point that the court found an estoppel against the plaintiff different from that pleaded in the defendant's answer and outside of the issues. We have not heretofore referred to this in our reference to the findings, as it is apparent that if we are correct in our conclusion that the finding of the court as to the defendant's lack of notice is sustained by the evidence, its finding on the question of this estoppel is immaterial and may be disregarded.

The next contention of the appellant which we will notice is that the finding of the court that the defendant tendered to the plaintiff the sum of $16,868.62 is not supported by the evidence, and in support of this contention refers to certain evidence that the tender was made in the form of a check made payable to Wilcox, which was not accepted by Wilcox nor indorsed by him. But there is also evidence that after the tender to Wilcox the defendant wrote to the plaintiff a letter, part of which reads as follows:

"From Feb. 2, 1916, we have had written out and ready for delivery a check for $16,868.62 to be paid upon the interim certificates. Mr. Wilcox has known of this for some time, but for some reason or other will not bring the certificates in for proper endorsement. If it really be true that you do own these certificates we would like to have you call at the office with them so that we may pay you this money and have you make the proper endorsements

thereon, and we also want to see that there has been endorsed thereon the various items that we have charged up against them in behalf of Mr. Wilcox.''

By section 1498 of the Civil Code it is provided: ''When a debtor is entitled to the performance of a condition precedent to, or concurrent with, performance on his part, he may make his offer to depend upon the due performance of such condition.'' The fact that the check was not produced to plaintiff is of no consequence, for it is provided by section 1496 of the Civil Code that, ''The thing to be delivered, if any, need not in any case be actually produced, upon an offer of performance, unless the offer is accepted.'' And, of course, all objections to the mode of the offer which plaintiff had an opportunity to state at the time, and which could then have been obviated by the defendant, were waived by plaintiff's failure to make any such objection. [4] The whole question, then, as to whether a tender was made to plaintiff, depends upon the existence of defendant's right, as a condition concurrent with the payment of the $16,868.62, to the performance of the condition imposed by it, namely, the indorsement upon the certificates of payments made and credits given prior thereto. That defendant was so entitled cannot admit of dispute if we are correct in our conclusion already announced as to the defendant's lack of notice of the assignment of the certificates; for, by payments made and credits given to Wilcox, in ignorance of his assignment of the instruments, defendant was in the same situation as if it had made the payments and given the credits to plaintiff himself. In that event it could have required proper acquittances therefor, and such precisely were the indorsements demanded. The objection of the appellant that the check was made out to Wilcox and not to him is met by the letter above quoted, wherein it is said: ''We would like to have you call at the office so that we may pay you this money.'' It is apparent from this language that the defendant was not insisting upon the plaintiff's acceptance of this particular check, but was prepared to deliver money or, if the plaintiff preferred, a check in his own name.

[5] It is finally urged by the appellant that the court ought to have allowed in its judgment an additional five per cent upon the amount represented by the bonds called

for in the certificates, for the reason that one of the conditions upon which the bonds were to be issued was that the defendant after a given time should have the right to call the bonds before maturity by paying an additional five per cent upon the principal of the bonds so called.

We think this point is disposed of by what we have said as to the waiver of the issuance of these bonds. The bonds were never issued. The occasion, therefore, never arose for their premature retirement and the consequent obligation to pay the additional five per cent. And if it be said that they ought to have been issued, the reply is that such issuance was validly waived.

This disposes of the questions necessary to be discussed. For the reasons given the judgment is affirmed.

Waste, P. J., and Kerrigan, J., concurred.