194

## Girard Trust Co. et al. v. The Pennsylvania Company, etc., Substituted Trustee

*Drinker, Biddle & Reath,* for claimant.
*Saul, Ewing, Remick & Harrison,* for defendant.

GORDON, JR., P. J., November 6, 1946.—This is a suit by the Girard Trust Company, formerly the owner of a $125,000 first mortgage bond of a western railroad company, against the Pennsylvania Company for Insurances on Lives and Granting Annuities to recover $11,250, representing interest on the bond which became due on January 1 and July 1, 1931 and January 1, 1932, when the Girard Trust Company was owner of it, and which has remained uncollected, since the payment dates, in the hands of the Union Trust Company of Ohio and its successor, the Pennsylvania Company, as trustee of the mortgage and of the fund in question. After the suit was brought, the Pennsylvania Company petitioned the court, admitting possession of the fund and liability to pay it to the proper owner, averring that others than plaintiff have laid claim to it, and asking leave to pay the money into court and for an order directing an interpleader between the rival claimants. That petition was granted, and in the interpleader framed thereunder, claimants, some seven in number, are aligned as plaintiffs, and the Girard Trust Company as defendant. To the statement of claim filed by plaintiffs in the interpleader, defendant filed an affidavit of defense raising questions of law, and, although given an opportunity to amend their statement of claim, plaintiffs in the interpleader informed us that they did not desire to do so. We, therefore, granted judgment in favor of the Girard Trust Company, as defendant in the interpleader, for the amount of the sum in controversy. The controlling facts in the case, as disclosed by the pleadings, are as follows:

The Cincinnati, Hamilton and Dayton Railway Company, which later changed its name to the Cincinnati & Lake Erie Railroad Company (hereinafter for convenience called "the railroad") floated, in 1926, a bonded indebtedness bearing interest at six percent,

and secured by a mortgage on the company's property. It was provided in the mortgage trust deed that, until permanent coupon bonds could be prepared and delivered, the company might issue interim certificates in lieu thereof, without coupons, but in substantially the same form as, and exchangeable for, a like amount of permanent bonds, when the latter should be issued. The mortgage provided that the temporary bonds, when duly authenticated by the trustee, the Union Trust Company of Cleveland, Ohio, should enjoy the security of the mortgage, and that interest thereon, when and as payable, should be paid only "upon the presentation, and endorsement of such payment upon, the temporary bonds".

Pursuant to the trust deed, the railroad company executed its temporary bond no. T83, in the principal amount of $125,000, with interest payable semi-annually on January 1st and July 1st of each year. This bond properly authenticated was, on or about July 18, 1930, bought by the Girard Trust Company, which remained the owner of it until November 22, 1935.

The trust deed provides in article III, sec. 1, that:

"The interest on coupon bonds to the date of their fixed maturity shall be payable only upon presentation of the several coupons for such interest as they respectively mature, and the company will deposit, or cause to be deposited, with the trustee the amount necessary to pay the coupons and interest due on such date. Each such installment of interest money so deposited shall be held for the account of *the holder or holders of the interest obligations due on such interest date, and shall be applied by the trustee to the payment of said interest coupons* upon presentation and surrender thereof at the place of payment designated therein, such coupons so paid to be forthwith cancelled and delivered to, or on the order of, the treasurer of the company. *Such deposit of interest*

*money shall discharge the liability of the company to pay the interest obligations representing such installment of interest, and thereafter such interest obligations shall not be entitled to any benefit hereunder."*

Section 2 of the same article also provides that "cash deposited for the payment of any bonds and interest obligations . . . shall be held by the trustee as a special trust fund . . . for the account of the holder or holders of such bonds and interest obligations, and shall be applied by the trustee to the payment of such bonds and interest obligations upon the presentation and surrender thereof", and that "such deposit of cash shall discharge the liability of the company on the bonds and interest obligations, to pay which such deposit shall be made, and thereafter such bonds and interest obligations shall not be entitled to any benefit of or under this mortgage".

Reading these two clauses together it seems to us obvious that it was the intention of the railroad company, the debtor, to entirely divorce its obligations under the bond and mortgage, as they matured and were paid to the trustee bank, from the mortgage debt, and to make the trustee of the money so paid from time to time merely the holder of it for the benefit of those *then* entitled to it, with the same force and effect as if such money had been paid directly to them. As each payment was made to the trustee bank, the railroad company ceased to be a debtor to the owner of the bond, and the bank became a trustee of the money for whoever was then entitled to that particular payment, and to no one else. If that be so, a subsequent purchaser of *the bond* acquired only whatever rights were left under it and the mortgage as so discharged and reduced.

The railroad regularly deposited with the trustee the instalments of interest as they became due, until and including that due on January 1, 1932; and the fund here in suit is the interest on temporary bond

no. T83 so deposited for the interest periods of January 1 and July 1, 1931, and January 1, 1932. This has never been collected from the trustee, although duly deposited with it by the railroad. Prior to July 1, 1931, the railroad notified holders of interim certificates that the permanent bonds were ready and would be exchanged for the certificates, but the exchange was never made by the Girard Trust Company in the case of its bond.

On January 28, 1932, receivers for the railroad company were appointed by the United States District Court for the Southern District of Ohio (Western Division), and thereafter payments of interest on the bonds ceased. On January 1, 1933, the trustee bank failed, and on September 27, 1935, the Pennsylvania Company, original defendant here, was appointed substituted trustee under the mortgage.

Following the appointment of receivers for the railroad a bondholder's protective committee was formed, with the Girard Trust Company as depository of the bonds of all bondholders who might join the committee. In the agreement setting up the committee it was provided that the bonds deposited under it "must bear or be accompanied by the coupon maturing July 1, 1932, and all subsequent coupons". On May 19, 1932, the Girard Trust Company, through its agent, deposited the bond here in question with itself, as depository, and issued therefor to its agent a standard form certificate of deposit, which, inter alia, acknowledged receipt of "one hundred twenty-five thousand dollars principal amount of the above mentioned bonds with appurtenant coupons due on and after July, 1932". This, of course, was not a strictly accurate recital, for that particular certificate of deposit was issued against an interim certificate which had no coupons attached to it, as indicated above. This circumstance is not without importance to a decision of the case, however, because as will be seen from the following

paragraph of this opinion, in which the sale of the bond by the Girard Trust Company to the claimant's vendor is recited, what was actually sold and delivered to the purchaser at that sale was not the bond itself, but a certificate of deposit, which recited a bonded obligation "with appurtenant coupons (i. e., interest obligations) due on and after July, 1932".

Two and a half years later, or on November 22, 1935, Girard Trust Company sold at auction to a brokerage firm its certificate of deposit with itself as trustee for the bondholders' committee, representing the $125,000 bond so owned by it, for $15, netting from the sale only 90 cents. That certificate "and all rights and interests represented thereby" was endorsed and delivered to the purchaser, Herbert H. Blizzard & Co., which thereafter sold fractional interests therein to the co-claimants, and new certificates of deposit in the fractional amounts so resold, and aggregating $125,000, were then issued to the co-claimants.

After the Federal court in Ohio approved the reorganization plan for the railroad company in 1940, and in accordance with its direction, Girard Trust Company, as trustee for the bondholders, delivered to the reorganized company all the bonds, including temporary bond no. T83, received by it as depository for the bondholders' protective committee, and new securities were issued under the plan, the co-claimants receiving their proportionate share thereof.

In the meantime the liquidator of the original trustee had been making payments to the Pennsylvania Company, substituted trustee, of the amounts originally paid by the railroad company on account of interest, and not paid over to the then bondholders, including the interest which constitutes the fund here in controversy. When the Girard Trust Company learned of the existence of this fund, on or about August 14, 1941, it made the demand upon the Pennsylvania Company for payment of the fund to it which resulted in this suit.

It may be added that the receiver of the railroad company has, pursuant to court authorization, entered a formal disclaimer to the fund here in question, and that, on November 6, 1944, the same Federal court entered an order that, "the Mortgage Trust Deed having been cancelled and discharged of record, the securities issued thereunder are cancelled, but without prejudice to any party claiming an interest in the fund before us".

At the outset of our discussion of this case, it may be observed that there is a certain amount of underbrush of facts, which have no bearing on our decision, but which should be cleared away to prevent confusion. Thus, it is immaterial that Girard Trust Company did not actually exchange its interim certificate for the permanent coupon bond, which it could have obtained at any time on and after January 1, 1931. Plaintiffs concede this fact, as indeed they must, for there was no requirement of exchange in the trust deed or in the temporary bond itself; and it has been held, in addition, that the issuance of permanent bonds may be waived by an interim certificate holder: Smith v. Central & Pacific Improvement Corp., 45 Cal. App. 384, 187 Pac. 456. It is clear, therefore, as plaintiffs admit, that the Girard Trust Company, on each due date, could have presented its interim certificate and received payment of the interest. Nor was there any duty upon the Girard Trust Company to present its bond and collect each payment of interest as and when it was made to the trustee. As has been seen, the temporary bond, for all intents and purposes, was the equivalent of the permanent bond, the coupons attached to the latter being "given simply as a convenient mode of obtaining payment of the interest as it becomes due upon the bonds": The City of Kenosha v. Lamson, 9 Wall (U. S.) 477, 19 L. Ed. 725, 728. If the bondholder chooses not to avail himself of that convenience, that is his concern. In fact, it has been

held in this jurisdiction, as long ago as 1880, that there is no obligation on the holder of a coupon bond to present the bond, or the coupons, for payment. In Williamsport Gas Company v. Pinkerton, 95 Pa. 62, 64: "He may hold on to the coupons just as long as he can hold on to the bond without requiring payment." In other words, the 20-year statute of limitations applicable to the specialty of the bond is equally applicable, to the interest coupons, and this is so, whether or not the coupons have been detached: The City of Kenosha v. Lamson, supra; McDowell, Executrix, v. North Side Bridge Company, 251 Pa. 585; see also Foulkrod v. Quaker City Cold Storage Co., 148 Pa. Superior Ct. 24. This being the clear legal rule upon that question, the position of the Girard Trust Company is not impaired by the fact that it did not actually collect the interest payments here in question, or that it failed to procure a permanent bond.

Who then is entitled to the interest which had been paid by the railroad company to the trustee, through January 1932? Is it the Girard Trust Company, which was the owner of the temporary bond when the interest was thus set aside, or plaintiffs, who bought a certificate of deposit representing a bond, be it temporary or permanent, "with the interest payments due thereon from July 1, 1932"? Our conclusion is that the Girard Trust Company is entitled to that fund.

We start with the fact that the trust deed provided, as has been noted, that the deposit of interest money with the trustee discharged the liability of the railroad company therefor, and "such interest obligations" (i. e., coupons or their equivalent, as represented by the temporary bond), would thereafter no longer "be entitled to any benefit" under the bond and mortgage. When the railroad company made the deposit with the trustee, it severed from its other corporate assets that amount of money, in much the same way that a declaration of a dividend on stock segregates the

amount of the dividend from the corporation's surplus, earnings and profits, and makes that particular dividend the property of the individual stockholders at that time. Indeed, we can see very little, if any, difference in these two situations. By analogy, therefore, the very familiar rule applies that, as between successive owners of stock, a declared dividend belongs to whoever owned the stock when it was declared, and, hence, that a sale of the stock after the dividend is declared, even though it has not been paid, carries no right to the dividend to the purchaser: Corgan v. George F. Lee Coal Co., 218 Pa. 386, 390; Opperman's Estate (No. 1), 319 Pa. 455, 465; Hornblower et al. v. Austin, 112 Pa. Superior Ct. 90, 93-96; 13 Am. Jur. 714; 18 C. J. S. 1119; 60 A. L. R. 703. Each deposit of interest with the trustee discharged the liability of the railroad company for that particular interest, and left it as a separate trust fund belonging to the then beneficiary whenever he should choose to collect it. This, together with the fact, which we have already pointed out, that what plaintiffs and their assignor bought was not the bond itself, but a certificate of deposit for a bond, which by the terms of the bondholders' deposit agreement, was to be only a bond for "one hundred twenty-five thousand dollars in principal, *with appurtenant (interest) coupons 'beginning' on and after July, 1932*", and clearly indicates, we think, that any prior interest already paid to the trustee neither was, nor was intended to be, sold and transferred to the purchaser of the bond. That is what plaintiffs' assignor paid $15 for. No mention whatever was made in the sale of the deposit certificate with respect to any coupons or interest due on the bond *before July 1932*, nor can it be reasonably contended that the Girard Trust Company intended to sell, or that the purchaser intended to buy, or had reason to believe that he was buying, anything more than what was required to be deposited under the deposit agree-

ment, namely, a bond "with appurtenant coupons due on and after July, 1932", or the equivalent thereof as represented by the interim certificate.

It is argued that the situation is the same as if *all* coupons were still attached to a permanent bond. In our opinion, however, it is quite clear that the requirement for endorsement of interest payments on the interim certificate was made solely for the protection of the trustee, so that it would not have to pay interest twice; and this cannot affect the relationship of the present parties inter se. We need not now decide what might be the result had the sale involved a bond with all coupons attached, for the language of the certificate of deposit purchased by plaintiffs' predecessor in interest shows beyond question that the parties' understanding was otherwise, and that it was never intended that a right to the interest which accrued before July 1932 should pass to the trustee for the bondholders' committee on the deposit of the bond with it. Compare 6 Fletcher, Cyclopedia of the Law of Private Corporations, §2734 and cases there cited.

Though not identical, the case is very analogous to that of the sale of a chattel containing unknown and secreted valuables. In such situations, it has been uniformly held that the vendee takes no title to the valuables as against the vendor. Thus, in the interesting old case of Huthmacher v. Harris's Administrators, 38 Pa. 491, the court held that there was no sale of notes, gold, silver coin and watches, to the value of $3,754.50, which had been found hidden in a secret drawer of a drill machine purchased by defendant for 15 cents at an auction sale of decedent's effects. The court said (p. 498):

"All that was sold was fairly bought, and may be held by the purchasers. The title to what was not sold remains unchanged. A sale of a coat does not give title to the pocket-book which may happen to be temporarily

deposited in it, nor the sale of a chest of drawers a title to the deposits therein. In these cases, and many others that are easily imagined, the contents are not essential to the existence or usefulness of the thing contracted for, and, not being within the contemplation or intention of the contracting parties, do not pass by the sale. The contract of sale, like all other contracts, is to be controlled by the clearly ascertained intention of the parties."

In that case the court declined to rest its decision on the doctrine of mistake of fact, stating at page 499 that since there was no contract of sale "there could be no mistake of fact to vitiate it, and therefore that doctrine has no possible application". It was said further (p. 499) that defendant held the valuables "evidently as treasure trove, which, though commonly defined as gold or silver hidden in the ground, may, in our commercial day, be taken to include the paper representatives of gold and silver . . ." See also Justice et al. v. Nesquehoning Valley R. R. Co., 87 Pa. 28, 32; 8 L. R. A. (N. S.) 793, 796; 34 Am. Jur. 631 et seq.

We hold, therefore, that the fund here in controversy, representing interest which had been paid by the debtor railroad to the trustee, and which became a trust fund for the benefit of the Girard Trust Company, the *then* owner of the interim certificate, long before its deposit with the bondholders' committee, was entirely outside the contemplation of the parties when the sale to claimant's predecessors in title was made; that the fund did not pass with the sale; and, hence, that to award it to plaintiffs herein would result in giving them a windfall, which cannot be justified in good conscience and fair dealing.

It was for these reasons that we gave judgment in favor of the Girard Trust Company, defendant in the interpleader.