Girard Trust Company (et al., Appellants) *v.* The Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee.

114

Argued December 5, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas Reath*, with him *J. Horace Churchman* and *Drinker, Biddle & Reath*, for appellants.

*Charles Myers*, with him *H. Francis DeLone, Edward A. G. Porter* and *Barnes, Dechert, Price, Smith & Clark*, for appellee.

PER CURIAM, January 6, 1947:
The judgment is affirmed on the following quoted portions of the well-considered opinion of President Judge GORDON in the court below:

"This is a suit by the Girard Trust Company, formerly the owner of a one hundred twenty-five thousand dollar ($125,000.00) first mortgage bond of a western railroad company, against the Pennsylvania Company for Insurances on Lives and Granting Annuities to recover eleven thousand two hundred fifty dollars ($11,250.00), representing interest on the bond which became due on January and July 1, 1931, and January 1, 1932, when the Girard Trust Company was owner of it, and which has remained uncollected, since the payment dates, in the hands of the Union Trust Company of Ohio and its successor, the Pennsylvania Company, as trustee of the mortgage and of the fund in question. After the suit was brought, the Pennsylvania Company petitioned the court, admitting possession of the fund, liability to pay it to the proper owner, averring that others than the plaintiff have laid claim to it, and asking leave to pay the money into court and for an order directing an interpleader between the rival claimants. That petition was granted, and in the interpleader framed thereunder, the claimants, some seven in number, are aligned as plaintiffs, and the Girard Trust Company as defendant. To the statement of claim filed by the plaintiffs in the interpleader, the defendant filed an affidavit of defense raising questions of law, and, although given an opportunity to amend their Statement of Claim, the plaintiffs in the interpleader informed us that they did not desire to do so. We, therefore, granted judgment in favor of the Girard Trust Company, as defendant in the interpleader, for the amount of the sum in controversy. The controlling facts in the case, as disclosed by the pleadings, are as follows:

"The Cincinnati, Hamilton and Dayton Railway Company, which later changed its name to the Cincinnati & Lake Erie Railroad Company (hereinafter for convenience called 'the railroad') floated, in 1926, a bonded indebtedness bearing interest at six per cent, and secured by a mortgage on the company's property. It was

provided in the mortgage trust deed that, until permanent coupon bonds could be prepared and delivered, the company might issue interim certificates in lieu thereof, without coupons, but in substantially the same form as, and exchangeable for, a like amount of permanent bonds, when the latter should be issued. The mortgage provided that the temporary bonds, when duly authenticated by the trustee, the Union Trust Company of Cleveland, Ohio, should enjoy the security of the mortgage, and that interest thereon, when and as payable, should be paid only 'upon the presentation, and endorsement of such payment upon, the temporary bonds'.

"Pursuant to the trust deed, the Railroad Company executed its temporary bond No. T83, in the principal amount of $125,000.00, with interest payable semiannually on January 1 and July 1 of each year. This bond properly authenticated was, on or about July 18, 1930, bought by the Girard Trust Company, which remained the owner of it until November 22, 1935. . . .

"The railroad regularly deposited with the trustee the installments of interest as they became due, until and including that due on January 1, 1932; and the fund here in suit is the interest on temporary bond No. T83 so deposited for the interest periods of January 1 and July 1, 1931, and January 1, 1932. This has never been collected from the trustee, although duly deposited with it by the railroad. Prior to July 1, 1931, the railroad notified holders of interim certificates that the permanent bonds were ready and would be exchanged for the certificates, but the exchange was never made by the Girard Trust Company in the case of its bond.

"On January 28, 1932, receivers for the railroad company were appointed by the United States District Court for the Southern District of Ohio, (Western Division) and thereafter payments of interest on the bonds ceased. On January 1, 1933, the trustee bank failed, and on September 27, 1935, the Pennsylvania Company, the original defendant here, was appointed Substituted Trustee under the mortgage.

"Following the appointment of receivers for the railroad a Bondholder's Protective Committee was formed, with the Girard Trust Company as depository of the bonds of all bond holders who might join the committee. In the agreement setting up the committee it was provided that the bonds deposited under it 'must bear or be accompanied by the coupon maturing July 1, 1932, and all subsequent coupons'. On May 19, 1932, the Girard Trust Company, through its agent, deposited the bond here in question with itself, as depository, and issued therefor to its agent a standard form Certificate of Deposit, which, inter alia, acknowledged receipt of 'one hundred twenty-five thousand dollars principal amount of the above mentioned bonds with appurtenant coupons due on and after July, 1932'. This, of course, was not a strictly accurate recital, for that particular Certificate of Deposit was issued against an interim certificate which had no coupons attached to it, as indicated above. This circumstance is not without importance to a decision of the case, however, because as will be seen from the following paragraph of this opinion, in which the sale of the bond by the Girard Trust Company to the claimant's vendor is recited, what was actually sold and delivered to the purchaser at that sale was not the bond itself, but a certificate of deposit, which recited a bonded obligation 'with appurtenant coupons (i. e., interest obligations) due on and after July, 1932'.

"Two and a half years later, or on November 22, 1935, Girard Trust Company sold at auction to a brokerage firm its certificate of deposit with itself as trustee for the bondholders committee, representing the $125,000.00 bond so owned by it, for fifteen dollars, netting from the sale only ninety cents. That certificate 'and all rights and interests represented thereby' was endorsed and delivered to the purchaser, Herbert H. Blizzard & Co., which thereafter sold fractional interests therein to the co-claimants, and new certificates of deposit in

the fractional amounts so re-sold, and aggregating $125,-000.00, were then issued to the co-claimants.

"After the federal court in Ohio approved the reorganization plan for the railroad company in 1940, and in accordance with its direction, Girard Trust Company, as trustee for the bondholders, delivered to the reorganized company all the bonds, including Temporary Bond No. T83, received by it as depository for the Bondholder's Protective Committee, and new securities were issued under the plan, the co-claimants receiving their proportionate share thereof.

"In the meantime the liquidator of the original trustee had been making payments to the Pennsylvania Company, substituted trustee, of the amounts originally paid by the railroad company on account of interest, and not paid over to the then bondholders, including the interest which constitutes the fund here in controversy. When the Girard Trust Company learned of the existence of this fund, on or about August 14, 1941, it made the demand upon the Pennsylvania Company for payment of the fund to it which resulted in this suit.

"It may be added that the receiver of the railroad company has, pursuant to court authorization, entered a formal disclaimer to the fund here in question, and that, on November 6, 1944, the same federal court entered an order that, 'the Mortgage Trust Deed having been cancelled and discharged of record, the securities issued thereunder are cancelled, but without prejudice to any party claiming an interest in the fund before us'.

"At the outset of our discussion of this case, it may be observed that there is a certain amount of underbrush of facts, which have no bearing on our decision, but which should be cleared away to prevent confusion. Thus, it is immaterial that Girard Trust Company did not actually exchange its interim certificate for the permanent coupon bond, which it could have obtained at any time on and after January 1, 1931. Plaintiffs concede this fact, as indeed they must, for there was no

requirement of exchange in the trust deed or in the temporary bond itself; and it has been held, in addition, that the issuance of permanent bonds may be waived by an interim certificate holder: *Smith v. Central & Pacific Improvement Corp.*, 45 Cal. App. 384, 187 P. 456. It is clear, therefore, as plaintiffs admit, that the Girard Trust Company, on each due date, could have presented its interim certificate and received payment of the interest. Nor was there any duty upon the Girard Trust Company to present its bond and collect each payment of interest as and when it was made to the trustee. As has been seen, the temporary bond, for all intents and purposes, was the equivalent of the permanent bond, the coupons attached to the latter being 'given simply as a convenient mode of obtaining payment of the interest as it becomes due upon the bonds': *City of Kenosha v. Lamson*, 9 Wall (U. S.) 477, 19 L. Ed. 725, 728. If the bondholder chooses not to avail himself of that convenience, that is his concern. In fact, it has been held in this jurisdiction, as long ago as 1880, that there is no obligation on the holder of a coupon bond to present the bond, or the coupons, for payment. In *Williamsport Gas Company v. Pinkerton*, 95 Pa. 62, 64: 'he may hold on to the coupons just as long as he can hold on to the bond without requiring payment.' In other words, the twenty years statute of limitations applicable to the specialty of the bonds is equally applicable to the interest coupons, and this is so, whether or not the coupons have been detached: *City of Kenosha v. Lamson*, supra; *McDowell, Executrix, v. North Side Bridge Company, Appellant*, 251 Pa. 585; see also *Foulkrod v. Quaker City Storage Company, Appellant*, 148 Pa. Superior Ct. 24. This being the clear legal rule upon that question, the position of the Girard Trust Company is not impaired by the fact that it did not actually collect the interest payments here in question, or that it failed to procure a permanent bond.

"Who then is entitled to the interest which had been paid by the railroad company to the trustee, through

January, 1932? Is it the Girard Trust Company, which was the owner of the temporary bond when the interest was thus set aside, or the plaintiffs, who bought a Certificate of Deposit representing a bond, be it temporary or permanent, 'with the interest payments due thereon from July 1, 1932'? Our conclusion is that the Girard Trust Company is entitled to that fund. . . .

"What the plaintiffs and their assignor bought was not the bond itself, but a certificate of deposit for a bond, which by the terms of the bondholders deposit agreement, was to be only a bond for 'one hundred twenty-five thousand dollars in principal, *with appurtenant (interest) coupons "beginning" on and after July 1932'* . . . Any prior interest already paid to the trustee neither was, nor was intended to be, sold and transferred to the purchaser of the bond. That is what plaintiffs' assignor paid fifteen dollars for. No mention whatever was made in the sale of the deposit certificate with respect to any coupons or interest due on the bond *before July 1932,* nor can it be reasonably contended that the Girard Trust Company intended to sell, or that the purchaser intended to buy, or had reason to believe that he was buying, anything more than what was required to be deposited under the deposit agreement, namely, a bond 'with appurtenant coupons due on and after July, 1932', or the equivalent thereof as represented by the interim certificate.

"It is argued that the situation is the same as if *all* coupons were still attached to a permanent bond. In our opinion, however, it is quite clear that the requirement for endorsement of interest payments on the interim certificate was made solely for the protection of the trustee, so that it would not have to pay interest twice; and this cannot affect the relationship of the present parties inter se. We need not now decide what might be the result had the sale involved a bond with all coupons attached, for the language of the certificate of deposit purchased by plaintiffs' predecessor in interest

shows beyond question that the parties' understanding was otherwise, and that it was never intended, that a right to the interest which accrued before July, 1932, should pass to the trustee for the bondholders' committee on the deposit of the bond with it: Compare 6 *Fletcher, Cyclopedia of the Law of Private Corporations,* 2734, and cases there cited. . . .

"We hold, therefore, that the fund here in controversy . . . was entirely outside the contemplation of the parties when the sale to the claimant's predecessors in title was made; that the fund did not pass with the sale; and, hence, that to award it to plaintiffs herein, would result in giving them a windfall, which cannot be justified in good conscience and fair dealing."

Judgment affirmed.