204 P.2d 1025

· METZKER et ux. v. LOWTHER.

No. 7410.

Supreme Court of Idaho.

March 18, 1949.

Rehearing Denied April 27, 1949.

See also 69 Idaho 115, 203 P.2d 604.

Jack Lowther, in pro. per., for appellant.

Cleve Groome, of Caldwell, for respondent.

BAKER, District Judge.

On November 13, 1943, Sam Metzker and Effie Metzker, his wife, plaintiffs and respondents, hereinafter in the statement of facts referred to as sellers, entered into written contract with Jack Lowther, defendant and appellant, hereinafter referred to as buyer, for the sale by them and the purchase by him of certain real property in Canyon County with livestock and other chattels thereon. Of the agreed consideration, $2562.50 was then paid; the balance payable $500 on or before November 5, 1944, and $400 on or before November 15th of each succeeding year until the full price with interest had been paid. The install-ment due in 1944 was to be and was evidenced by the promissory note of the buyer secured by mortgage upon one-half of the crops to be grown upon the premises during that year. This part of the transaction was involved in the case of Lowther v. Metzker decided at the present term but not yet officially published. Taxes and water assessments for the year 1943 and prior years were to be paid by the sellers, thereafter by the buyer. Agreeable to the contract, bill of sale to the chattels with warranty of title was executed and delivered to the buyer and warranty deed to the real estate was executed by the sellers and, with copy of the agreement, deposited with an escrow holder in Caldwell. The buyer was let into possession of the property, both real and personal. His possession was at all times undisturbed except by the sellers in enforcement of the contract.

The agreement contained the following provision upon which the parties place the conflicting interpretations hereinafter noticed:

"It is further agreed that the parties of the first part (sellers) shall within thirty days hereafter compile or cause to be compiled an abstract of title to the above described premises showing the title to said premises to be vested in them in fee free and clear of all liens, defects, and incumbrances and shall submit the same to the party of the second part (buyer) for examination and within twenty days

thereafter the party of the second part shall examine or cause to be examined said abstract of title and point out any defects in the title to the said real estate as shown by said abstract which shall make it less than a title in fee free and clear of all liens, defects, and incumbrances, and the parties of the first part shall proceed immediately and pursue diligently to the correction of said defects and shall if necessary bring any action in a court of competent jurisdiction to secure such defects and such action if necessary to be brought shall be completed before the installment due on said contract shall be due in 1944."

The buyer was authorized, at the expense of the sellers deductible from the next installment becoming due, to correct the title if the sellers did not.

The contract further provided for forfeiture by the buyer and for redelivery of possession upon default in performance of any covenant, particularly of payment of purchase price, taxes and assessments, continuing for sixty days after notice of intention to forfeit had been given to him by the sellers. By general provision, apparently applicable to the covenants of both parties, time was expressly made of the essence.

An abstract of title was furnished within the thirty-day period and was promptly examined by an attorney acting for both parties. Several defects were said to be disclosed.

On the date of the contract the sellers were in possession of the land and chattels under contract to purchase from one Eunice McIntyre and had paid to the escrow holder the full amount of the purchase price to be paid to her for the property. However, some disagreements regarding title developed between the sellers herein and Eunice McIntyre. These differences were ultimately but not immediately adjusted. On April 26, 1945, deed dated March 16, 1943, executed by Eunice McIntyre conveying the property to the sellers was filed for record. The abstract of title was then extended and closed as of the former date.

The sellers had not in the meantime demanded payment of the installment recited by the contract to be payable in November, 1944, and the buyer had not performed even to the extent of paying taxes or water assessments.

On October 4, 1944, the buyer served upon the sellers and the escrow holder notice that by reason of fraud and misrepresentation he offered to return the property he had received upon the condition that the consideration paid by him and the $500.00 note signed by him be returned to him. He subsequently commenced in the district court his suit to rescind the transaction and to be placed in statu quo. He based his action upon alleged misrepresentations by Sam Metzker of the character and productivity of the land and the distance to underlying water

table. The sellers resisted. Trial was had beginning on May 21, 1945, and the court on July 19, 1945, after finding that the buyer had purchased in reliance upon information obtained from personal examination and investigation by others for him and not upon any representation made by Metzker, signed decree in all respects favorable to the sellers and against the buyer. The decree was not attacked by appeal or otherwise.

On May 18, 1945, three days before the commencement of the trial referred to, the sellers caused to be served upon the buyer a written notice that the abstract of title had been prepared and was "tendered and offered" to him for examination. This notice will later be referred to in detail.

On July 19, 1945, the sellers caused to be served upon the buyer a "Notice of Intention to Declare Forfeiture" in which they pointed out, among other things, the failure of the buyer to make the payment stated in the contract to be due in November, 1944, failure to pay taxes and water charges and required performance within the period of sixty days under penalty of forfeiture. The buyer answered by denying that he had breached the contract in any way or that any obligation performable by him had become due and alleged that the sellers had violated the contract by failing to pay water assessments when due and had failed to correct the title or present abstract as provided in the contract;

also that he was induced to enter the agreement by false and fraudulent representations. He warned the sellers not to trespass upon the premises or interfere with his possession. The sellers did not at that time press the matter.

On January 31, 1946, the sellers caused to be served upon the buyer a second notice of intention to declare a forfeiture in all respects similar to the notice of July 19, 1945, except that the failures of the buyer to make the payments due on November 15, 1945 and 1945 water assessments were listed as additional defaults. The buyer remained inactive.

The sellers then commenced this suit. They alleged full performance by them, the particular breaches by the buyer enumerated in their second notice, prayed that the buyer be given additional time in which to perform and, if his defaults continued, his interest in the contract and in the real property be forfeited and their title quieted. The personal property was not mentioned in the notices or in the complaint.

The buyer, then appearing by attorney, unsuccessfully moved to strike parts of the complaint and demurred to it. Subsequently he filed amended answer and cross complaint. His answer presented his defenses as follows: That on the date of the contract the property was owned by Eunice McIntyre and not by the sellers; that the covenants in the warranty deed were breached upon its execution; that all obli-

gations of the buyer were dependent upon the precedent covenant of the sellers to furnish within the thirty-day period an abstract of title showing them to be seized of fee simple title and, since the sellers had failed in that respect, no sum was at any time due from him; that the notice of July 19, 1945, amounted to a rescission of the contract by the sellers, that he was willing to accept such rescission and restore and account upon granting to him the relief prayed for in his cross complaint. In his cross complaint he alleged false representations by the sellers of ownership and value of the property of $5,000 his execution of the contract and payment in reliance, the failure of the sellers to furnish abstract within thirty days or at all, his freedom from default, that the land was water logged and worthless and, by reason of impregnation with alkali, chemicals and minerals, was unfit for any use except poor pasture and that the land and chattels had a value of not more than $2,300. He prayed for cancellation of the contract and recovery of judgment for what he had paid, the surrender of the note, adjudication that the property had a value of not more than $2,300 and for general relief.

In answer, the sellers affirmatively alleged representations by them that they were purchasing from Eunice McIntyre, had deposited with the escrow holder the full amount of the purchase price and would have good title when she had corrected her title and that the buyer bought with knowledge of the facts. They pleaded as a bar the record in the buyer's unsuccessful rescission suit.

As a conclusion of the sellers' proof the buyer moved for "Judgment upon the Pleadings" assigning as ground therefor the insufficiency of sellers' proof. The motion was denied because it came too late.

The trial court found, so far as material to any question presented in this court, that the sellers were in possession under contract to purchase; that the agreement between the parties to this action contemplated that it might take considerable time to perfect the sellers' title and that the installment on the purchase price payable on November 5, 1944, would not actually become payable until the title had been corrected; that the sellers' title was perfected on May 18, 1945, that on or about that date they offered to the buyer abstract of title disclosing their ownership by title free and clear of incumbrances and that the payment of November 5, 1944, then became payable; that the buyer failed to object to the title, failed to pay water assessments and principal and interest installments due on May 18, 1945 and November 15, 1945, and that such defaults had continued for more than sixty days after service of notice of intention to declare forfeiture. The court concluded the decree in the buyer's suit to rescind fully settled and adjudicated as between the parties all matters relating to the condition of the soil and

concluded also that the buyer ought to be given the additional period of sixty days within which to perform and accordingly signed interlocutory decree granting that period for performance. On October 16, 1947, decree reciting the failure to reinstate and quieting the sellers' title was signed. Motion for new trial was made and overruled and from that order and from the final decree the buyer has appealed.

The nineteen assignments of error and the supporting arguments present appellant's positions now to be considered.

■ Appellant insists the trial court erred in overruling his motion to strike parts of the complaint. Respondents pleaded narratively or according to legal effect the covenants to be performed and alleged to have been breached by appellant. A complete copy of the contract was attached to, and by reference adopted as a part of, the complaint. Appellant moved to strike the allegations of the substances of the provisions relied upon on the ground that they were conclusions and repetitious. No conflict is pointed out or appears. That a contract may be pleaded in haec verbae or according to its legal effect is fundamental. Since the case of Bray v. Elmore County Irrigation Co., 4 Idaho 685, 44 P. 432, it has been an approved practice in this state to set forth in a pleading the substance or legal effect of specific provisions upon which the pleader relies and also to attach a copy of the entire agreement to the pleading as an exhibit and by reference adopt it. There seems to be much to recommend and but little, if anything, to condemn that practice. It has the advantage of calling, directly and definitely, the attention of the court and the adverse party to the specific provisions relied upon in a statement of a cause of action or defense. If the statement of the substance is at variance with the terms of the contract attached as an exhibit, the adverse party is not without remedy. The motion to strike was without merit and was properly overruled.

■ The appellant insists that the court erred in overruling his demurrer to the answer to his amended cross complaint and that the denials are insufficient to create issues. In support he cites several cases from this jurisdiction all decided prior to the amendment in 1925 of Section 5-612, I.C.A., permitting general denials to verified complaints. That section is by Section 5-617 made applicable to cross complaints. Except as to one allegation in the amended cross complaint answered by affirmative allegations, the cross defendant answered each allegation by denying "each and every allegation therein contained." The denials were sufficient. Peterson v. Bell, 50 Idaho 521, 298 P. 379.

■ In support of his demurrer he also insists that the allegations in the answer to his amended complaint that the respondents informed him prior to the execution of the contract that they were purchasing on contract from Eunice McIntyre, had paid

the full amount of the purchase price but would not be able to convey good title until she had conveyed to them and the allegation of the provision in the contract authorizing appellant to correct the title if the respondents did not, established the falsity of the allegations of performance contained in the complaint and destroyed their cause of action. In our opinion the affirmative allegations do not even tend to disprove and are not inconsistent with the allegations of the complaint. The demurrer to the answer to the amended cross complaint was without merit and was properly overruled.

One of the major contentions of the appellant is that the contract imposed upon respondents the positive duty of furnishing within thirty days from the date of the contract an abstract of title disclosing ownership free from all liens, defects and incumbrances and failing so to do irretrievably breached the agreement; that the court erred in finding "that the contract by its terms contemplated that it might take considerable time to perfect the title and provided that the payment due November 5, 1944, would not become due until the necessary steps to correct the defects—had been taken." His position in that regard is expressed on page 45 of his brief in these words:

"The stipulation in the contract that the respondents should furnish and tender to the appellant an abstract of title in thirty days showing a perfect title vested in the respondents was a condition precedent to any further performance by the appellant and was so understood by the parties and a breach of that condition terminated the contract."

We cannot agree with the appellant either that the contract bound respondents to correct their title and furnish abstract both within thirty days or that termination or breach of the contract would accompany their failure. The contract did require the respondents to furnish an abstract of title within thirty days from its date. That was done. The appellant was not obliged to accept title if not free from defects but he was required within twenty days to point out defects disclosed. That was done. Fifty days might have elapsed between the date of the contract and the receipt by respondents of objections to their title. In what situation were the parties to be after objections made either within or after the expiration of the thirty-day period? If title was found to be defective was the contract to end with the thirty-day period, although the time for objections had not then expired, or were the respondents to have full opportunity to correct? The contract itself furnishes the answer and completely refutes appellant's contention. The contract discloses a clear understanding of the parties that even suit might be necessary and that correction might not be had before the first deferred payment became due one year after the date of the contract. The provision, when stripped of non-essentials, reads:

" * * * the parties of the first part shall (after objections made) proceed * * * to the correction of said defects and shall if necessary bring an action * * * to secure such defects and such action * * * shall be completed before the installment due on said contract shall be due in 1944."

Even the refusal of the respondents to correct did not terminate the contract for the appellant was authorized, in that event, to correct at respondents' expense. The respondents were to have time to correct but until they had done so were not in position to demand payment of the 1944 installment.

■ It would seem the appellant is precluded for another and legal reason from now asserting that the failure of the respondents to submit abstract of title showing ownership free from defects within the period of thirty days from the date of the contract amounted to a breach and furnished him with right to rescind and to recover. On October 4, 1944, and more than nine months after the expiration of the thirty-day period, he served notice of rescission and on January 5, 1945, commenced his action to rescind. In both his notice and his complaint, he based his right upon fraud and misrepresentation, not of the violation by the respondents of any contractual provision. If the position he now urges is sound, respondents were in default, had breached the contract, when he served his notice and commenced his suit; his right to rescind on that account had then accrued. It was a ground for rescission existing at that time and was a matter that could and should have been litigated in that suit. It is not now available to appellant. King v. Richardson, 54 Idaho 420, 33 P.2d 1070; Mochel v. Cleveland, 51 Idaho 468, at page 481, 5 P. 2d 549; 34 C.J. 908; 50 C.J.S., Judgments, § 715.

■ Appellant insists that since the respondents alleged in their complaint that on the date of the contract they were the "owners and entitled to the possession" of the property the burden of making strict proof of that allegation was upon them; that proof that they were in possession under the contract to purchase was not only a failure of proof of the allegation but also established a legal inability to enter into contract to sell as owners. Respondents had entered into contract to purchase and had paid the full purchase price to the escrow holder with whom their grantor had delivered her deed conveying the property to them. Only the correction by their grantor of her title remained to entitle her to the purchase price and to entitle respondents to the deed. There was no representation in the contract that the respondents then had full title. There was no proof on behalf of appellant of representation of ownership as alleged by him nor proof on behalf of respondents of acquaintance by appellant with the condition of their title as alleged by them. Respondents were not obliged to have title free

from liens, defects or incumbrances until they demanded payment of the November, 1944, installment. The respondents were so situated with respect to the property as to give them full right to enter into contract for its sale.

In Easton v. Montgomery, 90 Cal. 307, 27 P. 280, 282, 25 Am.St.Rep. 123, the court said:

"It is not necessary, however, that the vendor should be the absolute owner of the property at the time he enters into the agreement of sale. * * * If the agreement is made by him in good faith, and he has at the time such an interest in the land, or is so situated with reference thereto, that he can carry into effect the agreement on his part at the time when he has agreed to do so, it will be upheld."

To the same effect are: Brimmer v. Salisbury, 167 Cal. 522, 140 P. 30; Beck v. Swank, 55 Cal. 552, 203 P. 1010; Ratterree Land Co. v. Security First Nat. Bank, 26 Cal.App.2d 652, 80 P.2d 102; Wilson v. Corcoran, 73 Mont. 529, 237 P. 521; Nadeau v. Texas Co., 104 Mont. 558, 69 P. 2d 586, 593, 111 A.L.R. 874; Townsend v. Rosenbaum, 187 Wash. 372, 60 P.2d 251; Provident Loan Trust Co. v. McIntosh, 68 Kan. 452, 75 P. 498, 1 Ann.Cas. 906.

■ Respondents were not required to have or to disclose title on the date of the contract, or within thirty days from its date or on any other specific date. They were obliged to perform the covenant to have title free from liens, defects and en-cumbrances only when performance was due. Bell v. Stadler, 31 Idaho 568, 174 P. 129; Sorensen v. Larue, 43 Idaho 292, 252 P. 494; Sherwood v. Daly, 58 Idaho 744, 78 P.2d 357; 55 Am.Jur., p. 480; 66 C.J. 510. They were required to have and to show absolute title only when they desired to collect the November, 1944, installment.

■ Appellant complains of the manner in which the completed abstract of title was submitted or offered to him. On May 18, 1945, respondent, Sam Metzker, had an officer serve upon appellant a written offer to deliver to him the completed abstract of title. The offer is:

"Caldwell, Idaho
"May 18, 1945

"Mr. Jack Lowther
"Middleton, Idaho
"Dear Sir:

"I herewith tender and offer to you abstract of title on the property you purchased from me, showing a merchantable title to be vested in you as per our contract,

"Unless you otherwise designate, I am placing the abstract with the escrow papers this week.

"Yours very truly

"Sam Metzker"

Appellant did nothing. He indicated no interest in the abstract of title or in having it examined; made no objection to the offer or to the failure of the respondents manually to deliver to him; made no request, in accordance with the invitation extended, that it be delivered at a particular

place or to a particular person; made no objection to its deposit with the escrow holder and made no attempt to withdraw it for examination.

Respondents' offer was sufficient under Section 16-1501, I.C.A., that:

"An offer in writing to * * * deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."

The duty to object, if he had objection, was imposed by the provisions of the section just quoted and by the provisions of Section 28-112, I.C.A., that:

"All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could then be obviated by him, are waived by the creditor if not then stated."

Appellant had not only the opportunity to object but was also invited to direct. He did neither and cannot now complain of the insufficiency of the offer or the failure of the respondents to produce or attempt actually to deliver the extended abstract Harding v. Home Investment & Savings Co., 49 Idaho 64, 286 P. 920, 297 P. 1101; Allis-Chalmers Mfg. Co. v. Harris, 56 Idaho 769, 59 P.2d 345; Latimer v. Capay Valley Land Co., 137 Cal. 286, 70 P. 82; Peckham v. Stewart, 97 Cal. 147, 31 P. 928; Sierra Land & Cattle Co. v. Bricker, 3 Cal.App. 190, 85 P. 665; Smith v. Central & Pacific Imp. Corporation, 45 Cal.App. 384, 187 P. 456. There is no suggestion that appellant was in any manner prejudiced or that, as a result of the manner of the tender, he neither did or failed to do any act which he would not otherwise have done or omitted to do or that he would not have continued his efforts to rescind and undo instead of to consummate the transaction. It is not asserted that respondents did not then have or that the abstract of title did not disclose, as the trial court found, that respondents then had a merchantable title. A "marketable" or "merchantable" title means one free and clear of all encumbrances "one in which there is no doubt involved, either as a matter of law or fact." Bell v. Stadler, 31 Idaho 568, 174 P. 129, 131.

Appellant also complains of the abandonment by respondents of their notice of intention to forfeit served on July 19, 1945, but does not point out how he was thereby prejudiced. That notice was served some sixty days after the completed abstract of title was offered to him and the same length of time after the November, 1944, payment, extended by the provision referred to, had become due. Appellant was then in default in payment of purchase price and of taxes and water assessments. Respondents then had full right to serve notice of intention to forfeit. They have at no time repudiated or rescinded the contract but have at all times endeavored and by their present suit seek to enforce it. We are at a loss to understand how appellant can complain because respondents

were more considerate of him than the contract required them to be.

Appellant asserts the trial court erred in striking from his amended cross complaint his allegation and in sustaining objections to his proof in support that Eunice McIntyre had served upon him notice of the forfeiture of the contract between her and the respondents and had demanded possession of the property. The notice and demand were served during the period of disagreement between Mrs. McIntyre and the respondents and prior to the delivery of her deed to them. Appellant's position is the allegation pleads a "constructive eviction" but cites no authority in support. To constitute an eviction, either actual or constructive, there must be a disturbance of possession. 66 C.J. 810. No such disturbance being alleged, the cross complaint was in that respect insufficient and the motion was properly sustained.

Appellant complains of the failure of the court to make findings as to breaches charged to him in the notices and in the complaint but of which no proof was submitted and the failure to find the value of the property.

Respondents were, of course, obliged to establish material defaults of the appellant but were not required to prove more than sufficient to warrant recovery. Allegations of unproved breaches became immaterial. Value of the property was also immaterial and a finding that the property had a value not exceeding that alleged by the appellant would not have aided him or changed the result. Value was alleged as a part of the cross complaint by which appellant sought to rescind on the ground of misrepresentation. There was no attempt on the part of appellant to prove misrepresentations or his reliance. That the property might not equal in value the consideration paid or promised would not, of itself, warrant recovery by appellant. Value was immaterial here for the further reason, as properly concluded by the court, that the decree in appellant's rescission suit bound the parties and foreclosed all further inquiry as to grounds of rescission existing at the time of the commencement of that action. A court is not obliged to find as to immaterial matters or issues which would not affect or change the judgment. Shawver v. Shawver, 25 Idaho 70, 136 P. 436; Foore v. Simon Piano Co., 18 Idaho 167, 108 P. 1038; Harris v. Chapman, 51 Idaho 283, 5 P.2d 733.

For the same reason there was no abuse of discretion in the denial of appellant's motion for permission to reopen to submit proof of value.

The denial of appellant's motion made after trial to amend his amended answer by alleging employment of Mr. Groome to examine the abstract of title for him and his failure properly to represent him was proper. The proposed amendment tendered no issue material to any controversy between the parties to this action.

Respondents established with certainty their right to prevail. Hence, treating appellant's motion made at the conclusion of respondents' proof as one for nonsuit, the action of the court in overruling it was proper.

The trial court conducted the entire proceedings with care and patience. No error appearing, the order and decree appealed from are affirmed. Costs are awarded to respondents.

HOLDEN, C. J., GIVENS and PORTER, JJ., and GLENNON, District Judge, concur.