539 P.2d 578

**Carl J. BAIR, Plaintiff-Respondent,**

v.

**Gary Reed BARRON et al., Defendants-Appellants.**

**No. 11650.**

Supreme Court of Idaho.

Aug. 5, 1975.

Rehearing Denied Sept. 4, 1975.

Robert M. Kerr, Jr., Kerr & Williams, Blackfoot, for defendants-appellants.

G. Rich Andrus, of Rigby, Thatcher & Andrus, Rexburg, for plaintiff-respondent.

McQUADE, Chief Justice.

On July 3, 1969, plaintiff-respondent, Carl J. Bair, (hereinafter respondent or lessee) and his wife entered into a share crop lease agreement for a term of three years with Rancho Del Norte a co-partnership of Blackfoot, Idaho, (hereinafter Rancho) under which respondent agreed to lease from Rancho and Rancho agreed to lease to respondent certain real property located in Bingham County, Idaho. The real property is particularly described by legal description, but for purposes of this opinion it will be referred to as farms numbered 9, 10, 11, and 12. Under the terms of the lease, respondent was to raise at least 300 acres of potatoes on the premises each year that the agreement was in effect, provided however, that no potatoes were to be grown on the same parcel of the land in consecutive years. As to the remaining land, it was left to the respondent's discretion as to what type of crops were to be planted from year to year. Rancho was to receive as rental for the use and occupation of the property, one-fourth of all the crops harvested. Rancho agreed to construct two additional bedrooms on the dwelling house situated on farm number 10 for the use and benefit of the respondent during the term of the lease. The lease contained a provision that in the event the premises were sold by the lessor during the term of the lease, either party including any such purchaser had the right to terminate the agreement upon thirty (30) days notice in writing subsequent

to the date of the sale. The lease made no applicable provision concerning accrued rights, *i. e.,* how the parties would deal with compensation for the work accomplished and materials furnished by the lessee should the lease be terminated by either party prior to its expiration date. The lease was to commence on September 1, 1969, and to terminate upon the completion of the harvest of 1972.

Rancho contracted with a management consulting service to provide technical assistance and to consult with respondent in regard to his farming operation. The trial court found that this consulting service directed and induced respondent to enter upon a high yield production program pursuant to the provision of the lease which required the respondent to grow at least 300 acres of potatoes. The high yield potato program involved fall plowing with the application of potash, and contemplated spring plowing with the application of nitrogen and phosphate. Respondent in farming the leased premises followed the instructions of the management consulting service.

On or about October 21, 1969, Rancho sold the leased property and assigned its interests in the leased premises to the defendants-appellants, Gary Reed Barron, Nanette Rita Barron, and J. Reed Barron (hereinafter Barrons or appellants). Appellants thereupon took possession subject to the terms and conditions of the lease. Respondent was not apprised of the sale of the premises until approximately November 15, 1969, when he received a letter from Rancho informing him of the sale of the premises and assignment of the lease to the appellants.

Subsequent to the receipt of this letter, respondent wrote to the appellants on November 20, 1969, advising them that he would like to terminate the lease, and that he was willing to renegotiate the lease to the best interest and welfare of both parties. The record indicates that respondent wrote to the appellants on at least two additional occasions; first in a letter dated February 11, 1970 and second, in a letter dated March 2, 1970. On both occasions he apprised them of the difficulties he was encountering in securing financing for the upcoming season, advised them that he was unable to continue the lease, and asked them for reimbursement for the work done and the materials furnished at his expense up until that time. There is no indication that appellants responded to these letters. Finally, on March 5, 1970, respondent served written notice on appellants that he was terminating the lease. A short time after the lease was terminated by the respondent, appellants were successful in leasing the vacated premises to two new tenants, Jessie Griffith and Blaine Dance.

Respondent brought this action to recover the value by which he claimed the leased premises were improved as a result of the work he performed and the materials he furnished in preparation for the 1970 farming season after appellants disregarded his demands for reasonable compensation. His basic contention was that he plowed, planted, seeded and fertilized portions of leased land in good faith pursuant to the terms of the lease and that the leased premises were improved by his efforts. He joined as defendants in the action the Barrons, Jessie Griffith, and Blaine Dance, alleging that all of the above, jointly and severably had been unjustly enriched at his expense in the amount of $5,742.26.

The five named defendants filed a motion to dismiss this action which was denied. The defendants then filed a motion for summary judgment which was granted as to defendants Griffith and Dance, but denied as to the Barrons. The Barrons then filed an answer and an amended answer to respondent's complaint. Before the action came to trial, J. Reed Barron died, and the trial court granted respondent's motion to substitute his son, Gary Reed Barron, as administrator for his father's estate, as a party.

This cause of action was tried by the trial court and a jury pursuant to I.R.C.P.

49(a). Special verdicts in the form of answers to interrogatories were returned by the jury setting forth the work performed by the respondent for plowing, discing, seeding, and fertilizing. The trial court concluded, based in part upon the answers to the interrogatories, and in part upon its own findings of fact, that respondent "unofficiously" and while under a legal duty to do so, conferred benefits upon the appellants which amounted to $5,311.26. It also concluded that respondent realized the benefit of the dwelling house situated on farm number 10, in the sum of $525, which it offset against the $5,311.26 owing to the respondent. It therefore held the appellants jointly and severally liable for the sum of $4,586.26, interest thereon and for costs. It is from this judgment that this appeal has been brought. We affirm.

Appellants set forth 31 assignments of error, which can be reduced to 5 major contentions; first, that the trial court erred in its construction of the termination clause of the lease; second that the trial court erred in failing to find a voluntary surrender under the lease, and in allowing respondent to recover under a theory of unjust enrichment; third, that the trial court erred in its evidentiary rulings; fourth, that the trial court erred in some of its findings of fact; and fifth, that the trial court erred in failing to make additional findings of facts and conclusions of law as requested by appellants.

In their first assignment of error, appellants maintain that the construction placed upon the termination clause of the lease by the trial court was unreasonable, contrary to the intention of the parties, and therefore erroneous. They urge this Court to find respondent's termination of the lease to be contrary to the terms of that agreement.

The termination clause at issue reads as follows:

*"Section XII—Termination.*

2. It is further mutually agreed by the parties hereto that in the event that the demised premises covered by this agreement are sold by the Lessor during the term of this agreement, then either party hereto, including any such purchaser, shall have the right to terminate this agreement upon 30 days notice in writing subsequent to the date such sale transaction is completed, provided, however, that if such sale is completed during the growing season of any particular year, Lessees have the right to complete the growing and harvesting of the crops then growing and may retain possession of the dwelling house on Lessor's Farm No. 10 and storage facilities for the period of time as aforementioned in this agreement."

The crucial language in this clause is " . . . upon thirty days notice in writing subsequent to the date such sale transaction is completed, . . ." The trial court construed this phrase to mean that in the event the premises were sold by the lessor during the term of the lease, either party including any such purchaser had the right to terminate upon thirty days notice in writing subsequent to the date of the sale. Based upon this interpretation the trial court found respondent's notice of termination sent to appellants on March 5, 1970 (several months after Rancho sold the premises to appellants) to be valid.

■ We agree with the construction placed upon the termination clause by the trial court. The meaning ascribed to this clause, is clear and unambiguous, *i. e.,* that the phrase " . . . thirty (30) days notice in writing . . ." has reference to the time when the termination would become effective rather than to the period of time during which notice of termination must be made. Our conclusion in this regard is buttressed by a reference to Clause 1 of Section XII of the same lease where the following language is employed:

"If the Lessees fail to keep and perform any of the covenants and agreements as required hereunder at the time and manner herein set forth, . . . or if in the opinion of the Lessor or its agents,

the Lessees are failing in any respect to properly plant, care for, or harvest all or any part of the crops grown on such premises, or to otherwise properly manage the farm operation, then *upon three days notice in writing* to said Lessees the Lessor may, . . . take possession of the demised premises, . . . ." (Emphasis added)

▪ The only reasonable interpretation to be placed upon the use of the language " . . . upon three days notice in writing . . ." in Clause 1 Section XII of the lease is that termination of the lease for the lessee's failure to perform would take effect three days after notice was given. The use of similar language or phraseology " . . . upon thirty days notice in writing . . . " in Clause 2 of Section XII of the lease must be given an interpretation consistent with that employed in construing Clause 1 of Section XII. To conclude otherwise would render the lease internally inconsistent. It is a well settled rule in the construction of contracts that where nothing in the context indicates otherwise, words used in one sense in one part of the contract are deemed to have been used in the same sense in another part of the same instrument.[1]

Appellants' second assignment of error consists of two parts; first they contend that respondent's termination letter dated March 5, 1970 was invalid because it was neither signed nor acknowledged by respondent's wife as required under I.C. § 32–912,[2] and second they maintain that re-

spondent voluntarily surrendered the premises and refused to proceed with the lease agreement, and therefore should not be allowed to recover the reasonable value of the work he performed and the materials he furnished. Appellants thus argue that any benefits which may have inured in their direction as a result of any work furnished and materials provided by respondent, were involuntarily acquired, and that retention of these benefits was in no way unjust so as to give rise to an obligation to compensate respondent.

▪ It has been a long recognized rule of appellate procedure in this state that an issue which was not presented before the trial court cannot be properly raised for the first time on appeal.[3] Appellant did not raise at any stage of the proceedings any issue with regard to the want of validity of the termination letter. Accordingly, appellants cannot raise such issue for the first time on appeal.

▪ The trial court correctly treated respondent's vacating of the leased premises not as a surrender of his leasehold interest as appellants' suggest, but rather as a lawful termination pursuant to the terms of the lease. Thus the cases cited by the appellants for the proposition that a tenant who voluntarily surrenders or abandons a lease cannot recover from his landlord the reasonable value of his services up until the time of his departure from his landlord are inapposite and clearly distinguishable from the case at hand. As reflected in its findings of fact and conclusions of law the

1. *See Caminetti v. Pacific Mut. Life Ins. Co. of California*, 22 C.2d 344, 139 P.2d 908 (1943); *Schweigert v. Beneficial Standard Life Insurance Co.*, 204 Or. 294, 282 P.2d 621 (1955); *Holter v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 1 Wash.App. 46, 459 P.2d 61 (1969).

2. I.C. § 32–912, as applicable when this case was first heard provided in pertinent part: "32–912. *Husband's control of community property.*—The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he can not sell,

convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered: provided, that the husband or wife may, by express power of attorney, give to the other the complete power to sell, convey or encumber said community property, either real or personal." The statute was amended in 1974.

3. *See Dunn v. Baugh*, 95 Idaho 236, 506 P.2d 463 (1973); *Willows v. City of Lewiston*, 93 Idaho 337, 461 P.2d 120 (1969); *Williams v. Havens*, 92 Idaho 439, 444 P.2d 132 (1968).

trial court held that upon the termination of the lease, appellants were the recipients of the benefits of the work and materials conferred upon the land by respondent during the time he was obligated to perform under the lease. Thus, respondent did not confer these benefits voluntarily or gratuitously. The trial court further found that appellants were paid for the work by the tenants who came upon the land after respondent's departure. Under these circumstances, respondent was entitled to receive reasonable reimbursement for his efforts and for the materials he furnished prior to the time he vacated the premises. To allow appellants to retain the benefits of respondent's services without paying for them would have been unjust.

The concept of requiring a person who has been unjustly enriched at the expense of another to make restitution to the other is well recognized in the law.[4] In defining the nature of this right this Court noted in *Smith v. Smith*:[5]

"The substance of an action for unjust enrichment lies in a promise, implied by law, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter."

In the third assignment of error, appellants attack several evidentiary rulings made by the trial court which were adverse to their position. Only two require consideration.

Appellants first argue that error was committed in admitting into evidence documents relating to Rancho's agreement with a management consulting service and in admitting documents concerning soil tests performed and recommendations made by this service with regard to the leased premises. They assail the admission of these exhibits on relevancy, and materiality and hearsay grounds. Secondly, appellants

maintain that the trial court erred in permitting Griffith and Dance to testify as to the conversations they had with J. Reed Barron whereby each one agreed to pay for certain work performed by respondent while still a tenant on the premises. It is their position that the written leases executed by Griffith and Dance with them, state all the terms or conditions under which they went into possession, and that admissions of any statements regarding compensation arrangements not found in the executed lease violate both the parol and best evidence rule. Neither of these contentions are well taken.

The contract entered into between appellants' predecessor in interest (Rancho) and the management consulting service, and the records, tests, and recommendations made by this consulting service were properly admitted into evidence. These documents bear upon respondent's contention that the work he performed in applying potash was at the behest of appellants' predecessor in interest, and as such have sufficient probative value on a material issue in the proceedings to warrant their admission. As to the hearsay contention, these documents were not introduced to prove the truth of the statements contained within them, but rather were admitted to prove that respondent in undertaking his efforts in preparation for the 1970 harvest, was not a volunteer.

Furthermore, we fail to comprehend how the admission of statements made by the two tenants who undertook to farm the premises after respondent departed, with regard to their agreements to compensate appellants for the work performed on the premises by respondent in preparation for the 1970 harvest, violated either the parol or best evidence rule. The testimony elicited from Griffith and Dance concerning payments they allegedly made

4. The Restatement of the Law of Restitution § 1 (1937) provides: § 1 Unjust Enrichment. A person who has been unjustly enriched at the expense of another is required to make restitution to the other.

5. 95 Idaho 477, 484, 511 P.2d 294, 301 (1973).

to appellants was not introduced to contradict, vary, or alter the terms of the lease agreements entered into by either of these two tenants with appellants.[6] Rather the evidence was utilized to prove that respondent's work and materials benefited the land. .

The best evidence rule is not applicable to this case. The best evidence rule was designed to foster accuracy in the presentation of evidence found in writings.[7] Respondent was not interested in nor was he attempting to prove the contents of any lease agreements between Dance, Griffith and appellants. Thus appellants' reliance upon this rule to support their second evidentiary contention is misplaced.

 Appellants' fourth assignment of error attacking numerous findings of facts made by the trial court, and their fifth assignment of error assailing the trial court's failure to make findings of fact which were requested by them in their motion for entry of findings of fact and conclusions of law can be dealt with together. As to the fourth assignment of error we have reviewed the findings of fact which appellants believe were not supported by the evidence, and find that there exists substantial and competent evidence to sustain these findings.[8] As to the fifth and final assignment of error a motion for entry of findings of fact and conclusions of law must be treated as a motion to amend the findings of the court or to make additional findings pursuant to I.R.C.P. 52(b).[9] We believe a motion of this kind is addressed to the sound discretion of the trial court. Where as in this case there is no evidence that this discretion has been abused, the

trial court's ruling on this motion will not be disturbed on appeal.[10] We are convinced that the trial court fully discharged its duty in this case, as its findings of fact and conclusions of law cover the essential facts and propositions of law that laid a basis for its decision.

Judgment affirmed.

Costs to respondent.

McFADDEN, DONALDSON, SHEPARD, and BAKES, JJ., concur.

---

6. *See* Bell, Handbook of Evidence for The Idaho Lawyer, at 193 (2nd ed. (1972)), where the parol evidence rule is defined as providing that evidence, " . . . the effect of which is to vary the terms of a complete written instrument or to change, cut down, or alter the effect thereof, is inadmissible."

7. *See* Bell, Handbook of Evidence for the Idaho Lawyer, supra n. 6, at 208.

8. *See* I.R.C.P. 52(a) ; *Saviers v. Saviers*, 92 Idaho 117, 438 P.2d 268 (1968).

9. I.R.C.P. 52(b) provides in pertinent part: "*Amendment of findings of court.*—Upon motion of a party made not later than ten (10) days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly."

10. *See Leonardson v. Moon*, 92 Idaho 796, 451 P.2d 542 (1969) ; *McGregor v. Phillips*, 96 Idaho 779, 537 P.2d 59 (1975).