593 P.2d 988

**Royce JENSEN, Plaintiff,
Counter-Defendant-Appellant,**

v.

**Cecil V. BLEDSOE and Carmen J. Bled-
soe, husband and wife, Defendants,
Counter-Claimants-Respondents.**

No. 12169.

Supreme Court of Idaho.

April 17, 1979.

Daniel A. Slavin of Stephan, Slavin, Eaton & Stephan, Twin Falls, for Royce Jensen.

Donald J. Chisholm of Goodman, Duff & Chisholm, Rupert, for Cecil V. Bledsoe.

McFADDEN, Justice.

This case arises out of a contract for the sale of the realty and personalty constituting a meat packing plant. On December 21, 1973, plaintiff-appellant Royce Jensen agreed to make extensive improvements to the plant and to sell it to defendants-respondents Cecil V. and Carmen J. Bledsoe for $160,000. The contract provided:

> That the Buyers do hereby covenant and agree to pay to the Seller the sum of FIFTY THOUSAND DOLLARS ($50,-000.00) lawful money of the United States of America, on the execution of this agreement and the further sum of ONE HUNDRED TEN THOUSAND DOLLARS ($110,000.00) in monthly installments . . ..

Respondents took possession of the plant two days later although the $50,000 down payment required by the contract had not been made. Instead, respondents executed and delivered a promissory note to appellant for the amount of the down payment and paid $10,000 on the note. On April 1, 1974, the parties reduced to writing several amendments to the initial contract. The amendment memorandum provided that ap-

pellant (seller) would return to respondents (buyers) the promissory note given as a down payment and that the $40,000 balance of the down payment would be made by respondents in two installments: $15,000 by April 1, 1974, and $25,000 by May 1, 1974. In return, appellant was given an extension on the time for completing the improvements.

Although the first $15,000 installment on the down payment was timely made, respondents failed to make the $25,000 installment payment due May 1, 1974. In early June, 1974, appellant gave notice of default pursuant to the contract. Respondents tendered $15,000 of the second installment a few days later but it was refused.

Appellant instituted this action seeking forfeiture of the contract. He also prayed for money damages for the rental value of the property from the date of default and for harm he alleged respondents had done to the property. Later the complaint was amended, seeking foreclosure of the contract and judicial sale of the property.

Respondents admitted to not paying the balance of the down payment. However, in a counterclaim respondents alleged that appellant had fraudulently misrepresented both the characteristics of the packing plant's sewage treatment system and a cased well on the property; that appellant had failed to make some agreed improvements and had made others in an unworkmanlike manner; and that appellant had failed to pay irrigation district assessments predating the contract, to deliver full possession of the real property, and to deliver to the escrow holder an unencumbered warranty deed and a title policy showing marketable title in the buyers, all required by the contract. The counterclaim asked for money damages and an order prohibiting appellant from entering the premises.

A restraining order was issued and respondents made some of the improvements themselves, apparently because the United States Department of Agriculture threatened to close the plant unless the improvements were finished by January 1, 1975.

After trial in June, 1975, the trial court denied appellant relief on his complaint. The court gave respondents judgment on their counterclaim, however, finding that appellant had fraudulently misrepresented the condition of the well and sewage treatment system, had failed to disclose hidden defects in the building and had improperly constructed the improvements. The court ruled that respondents were justified in withholding the balance of the down payment and therefore had not breached the contract. Respondents were awarded more than $100,000 as damages for misrepresentation of the condition of the well and sewer system and also as damages for failure to comply with the construction portion of the contract and for failure to disclose hidden defects. Sums awarded respondents were to be offset against the amount due appellant on the contract. The trial judge entered judgment for respondents and this appeal followed.

■ On appeal appellant raises numerous assignments of error. Appellant first contends that the trial court erred in concluding that he is liable for fraudulently misrepresenting that a cased well on the property was usable. Appellant argues that the court could not make such a conclusion after finding that respondent Cecil Bledsoe knew the well was unusable (and therefore knew the misrepresentation was false). Appellant correctly points out that for a misrepresentation to be actionable, the hearer must be ignorant of the statement's falsity and rely on its truth. *Fowler v. Uezzell*, 94 Idaho 951, 500 P.2d 852 (1972). Appellant therefore asks that the trial court's conclusion of law be reversed and that the damages awarded for this item be stricken from the judgment.

Finding of fact seventeen, on which the challenged conclusion of law is based, reads:

17. That the cased well had been abandoned and a sand point used in its place and that defendants knew that the cased well was not in use at the time of his representation to defendant Cecil Bledsoe.

Initially this court notes that "*his* representation" makes no sense in light of the plural antecedent "defendants." Also, our examination of the structure of the findings of fact indicates that the trial court had in mind the nine elements of fraudulent misrepresentation and intended to find one such element: the speaker's knowledge of the falsity of his statement. In finding number fifteen, the court states "that prior to the purchase and execution of the contract, the plaintiff specifically represented to defendant Cecil Bledsoe that the primary source of water for the main plant was a cased well in front of the plant . . . ." In finding number sixteen, the court found "That defendants relied upon said representations in making the purchase of the property . . . ." Finding seventeen then addresses the question of appellant's knowledge of the falsity of his representations. A subsequent finding states "that the reasonable cost for a cased well of the type represented by plaintiff to defendants is $1,902.25".

■ "It is a well established rule that a judgment should not be reversed or a new trial ordered for what so clearly appears to be merely a clerical error." *Falkenstein v. Steele*, 77 Cal.App.2d 398, 175 P.2d 257 (1946) (trial court intended "true" to read "untrue"). *Accord, Ellis v. Strickland*, 158 Fla. 736, 30 So.2d 100 (1947) ("John Stallings" should have read "John Strickland"); *Rawson v. Blanton*, 204 Miss. 851, 35 So.2d 65 (1948) (in action by W. T. Blanton against W. Rawson, judgment for "W. T. Rawson" should have read "W. T. Blanton"). In light of the above findings of fact and the testimony of respondent Cecil Bledsoe in the record, this court concludes that finding seventeen should read: "that *plaintiff* knew that the cased well was not in use at the time of his representation to defendant Cecil Bledsoe." In the instant case this court declines to reverse a portion of the judgment on the basis of the lower court's apparent clerical error. Rather, this court will read finding of fact seventeen as the court below intended it to read.

Appellant next contends that regardless of any clerical error in finding seventeen, the trial court erred in finding that he fraudulently misrepresented the characteristics of the well and the plant's sewage treatment system. Appellant argues that respondents failed to prove all the elements of fraudulent misrepresentation by clear and convincing evidence. Appellant contends that the trial court erred because the testimony of appellant and respondent Cecil Bledsoe are directly contradictory. Thus the evidence was not clear and convincing.

■ Whether evidence is clear and convincing is a question for the trial court. "The trial court is the appropriate tribunal to weigh the evidence, and determine whether it is convincing and satisfactory, within the meaning of the rule." *Wright v. Rosebaugh*, 46 Idaho 526, 529, 269 P. 98, 99 (1928), quoted in *Parks v. Mulledy*, 49 Idaho 546, 290 P. 205 (1930). See, *Collins v. Parkinson*, 98 Idaho 871, 574 P.2d 913 (1978); *Russ Ballard & Family Achievement Institute v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 548 P.2d 72 (1976).

■ In determining whether evidence is clear and convincing, the trial court is entitled to weigh, compare, test and judge the worth of the evidence in light of all the facts and circumstances in evidence. *Burningham v. Burke*, 67 Utah 90, 245 P. 977 (1926). That is, the court determines the testimony's probative force, and effect, not merely its quantity. *Heitman v. Davis*, 127 Fla. 1, 172 So. 705 (1937). "Additionally, the trial judge is the arbiter of conflicting evidence; his determination of the weight, credibility, inference and implications thereof is not to be supplanted by this court's impressions or conclusions from the written record." *Meridian Bowling Lanes, Inc. v. Brown*, 90 Idaho 403, 411, 412 P.2d 586, 590 (1966); *Fish v. Fleishman*, 87 Idaho 126, 391 P.2d 344 (1964); *Sellars v. Sellars*, 73 Idaho 163, 248 P.2d 1063 (1952). Thus if the trier of fact finds a fact to be established by clear and convincing evidence, that finding will not be reversed unless the finding is clearly erroneous or not supported by substantial and competent evidence. I.R.C.P.

52(a); *Courtright v. Robertson*, 99 Idaho 575, 586 P.2d 265 (1978); *Shrives v. Talbot*, 91 Idaho 338, 421 P.2d 133 (1966).

■ In the instant case the court received conflicting evidence concerning the representations made about the sewage treatment system. Appellant testified that he represented that the sewage system was approved by the state and it was uncontroverted that the state had issued an approval letter. Appellant also testified that he accurately described the system to respondent Bledsoe. On the other hand, respondents called as a witness Alex Schaefer, the water quality specialist for the Idaho Department of Health and Welfare who approved the system. This witness testified that he based his approval on appellant's representations and that he would not have approved the system if he had been advised as to how it actually existed. Respondent Cecil Bledsoe testified that he had previously owned a packing plant where he had been ordered to install a new sewage treatment system and that he was not willing to purchase a plant without an approved system unless the purchase price reflected the cost of installing such an approved system. Respondent Bledsoe also testified that appellant stated that the system was approved and described the underground layout of the system in a way much different from the way it was later found to exist.

Considering this testimony and the other circumstances in the case, the trial court found by clear and convincing evidence all the elements of fraudulent misrepresentation as to the sewage system. *Fowler v. Uezzell, supra*; *King v. H. J. McNeel Inc.*, 94 Idaho 444, 489 P.2d 1324 (1971); *Gillingham v. Stadler*, 93 Idaho 874, 477 P.2d 497 (1970). It is the conclusion of this court that such findings are sustained by competent and substantial evidence and hence will not be disturbed on appeal. I.R.C.P. 52(a); *Skelton v. Spencer*, 98 Idaho 417, 565 P.2d 1374 (1977); *Idaho Water Resource Board v. Kramer*, 97 Idaho 535, 548 P.2d 35 (1976).

■ Concerning the contention about the cased well, appellant testified that he told respondent Cecil Bledsoe that there were two wells on the premises, one of them a "sandpoint" driven down next to an abandoned cased well. Cecil Bledsoe, on the other hand, testified that he had never looked at the particular well prior to purchasing the plant but that appellant had told him that it was a functioning six-inch cased well. Bledsoe said that only several months later when installation of a new pump was required did he discover that the cased well was abandoned and a sandpoint driven down beside it.

Having examined the record it is the conclusion of this court that the trial court's findings of fact concerning representations as to the cased well are sustained by substantial and competent, though conflicting, evidence and will not be disturbed by this court. I.R.C.P. 52(a); *Skelton v. Spencer, supra*.

■ Appellant next argues that the trial court erred in awarding respondents the cost of having a cased well drilled and an approved sewage disposal system installed as damages for the fraudulent misrepresentations.

The trial court reasonably could have inferred that the price respondents agreed to pay for the property reflected the probable cost of the cased well and sewage disposal system which appellant claimed existed. Consequently, the reasonable cost of drilling a cased well and installing an approved sewage disposal system was properly considered by the court as evidence in determining the difference, if any, between the purchase price as agreed and the value of the property as delivered to respondents. *Koehler v. Stenerson*, 74 Idaho 281, 260 P.2d 1101 (1953). Finding no error, we affirm the trial court's judgment of $26,074.14 against appellant for his fraudulent misrepresentations.

Appellant assigns as error the trial court's findings that he breached the contract, that respondents were entitled to withhold a portion of the down payment and that respondents were not, on account of withholding payment, in default of the contract.

In its findings of fact, the trial court found that appellant had breached the parties' contract in several respects: (1) appellant was unable to furnish marketable title by reason of a mortgage on the property; (2) he was unable to furnish a title policy containing no exclusions; (3) he had failed to give respondents complete possession by (a) retaining personal property on the premises and (b) denying respondents and their employees the use of the only rest room on the premises; (4) appellant failed to pay operation and maintenance charges of the Minidoka Irrigation district and certain telephone bills; and (5) appellant failed to make the improvements required by the contract in a workmanlike and proper manner. Appellant attacks the finding that he breached the contract through his inability to furnish marketable title by arguing that he was not required to furnish marketable title until the time the purchase price was paid in full. Appellant attempts to show that the other actions were not breaches of the contract, or, that if they were, respondents waived them. Appellant maintains that there having been no true breach that was not waived, the court erred in not finding respondents had defaulted on the contract by withholding a portion of the down payment.

This court sustains appellant's claim that the court below erred in finding that his failure to furnish marketable title was a breach of the contract. The trial court found that appellant breached the contract when he deposited with the escrow holder a warranty deed which was subject to a mortgage. This court finds no substantial evidence to support that finding. The relevant contract provisions are as follows:

The Seller agrees contemporaneously with the execution of this contract to make and execute his Warranty Deed to the real property described, subject to no liens and encumbrances, except 1974 taxes. That said documents together with an executed copy of this Contract of Sale shall be escrowed with the First Security Bank of Idaho, N.A., Rupert, Idaho.

. . . . .

That the real property and personal property shall be transferred free and clear of all liens and encumbrances, save and except 1974 real and personal property taxes, and marketable title shall be conveyed to the Buyers subject to no exceptions. That the Seller shall be required to provide a policy of title insurance showing marketable title to the real property to the Buyers, a policy of title insurance will be deposited with the escrow herein named . . . .

. . . . .

Title to all of the above described personal and real property shall at all times remain in the Seller . . . . That all title to such property shall transfer to the Buyers upon the receipt of the full payment of the purchase price, with interest.

The record shows that appellant executed a warranty deed which stated that the "premises are free from all encumbrances," although appellant admits that the land was mortgaged. Appellant also testified, apparently without contradiction, that respondent Cecil Bledsoe knew of the mortgage. The record also shows that the policy of title insurance which appellant put into escrow had several exceptions.[1] However, the parties did not testify nor did the court find that the contract required appellant to have unencumbered title at the time the warranty deed was given to the escrow holder.

In the absence of a contract provision to the contrary this court has followed the general rule that "although the title of one who enters into an executory contract for the conveyance of land may be defective at the time he enters into such contract, if the vendor is able to convey a good title when the time for the conveyance of the land arrives, this is sufficient." 77 Am. Jur.2d Vendor and Purchaser, § 234. The

1. The contract required appellant to provide title insurance in the amount of $120,000. It apparently escaped the parties' and the trial court's notice that the policy placed in escrow has a face amount of $90,000.

application of the rule in this jurisdiction is stated in *Sherwood v. Daly*, 58 Idaho 744, 749, 78 P.2d 357, 359 (1938), where the court stated: "A vendor under a land contract is only required to have the title contracted for at the time performance is due." See, also, *Metzker v. Lowther*, 69 Idaho 155, 165, 204 P.2d 1025 (1949); *Barney v. Curtis*, 37 Idaho 742, 747, 218 P. 190 (1923). In harmony with this rule is the further rule that "the existence of an encumbrance which may be removed or discharged by application of the purchase money is not considered such a defect as to render the title unmarketable and excuse the purchaser from the performance of his contract." 77 Am.Jur.2d Vendor and Purchaser, § 192; C. Maupin, Maupin on Marketable Title to Real Estate 849, § 304 (3d ed. 1921); *Harrington v. Heaney*, 101 A.2d 838 (D.C.Mun. App.1953); *Sachs v. Owings*, 121 Va. 162, 92 S.E. 997 (1917).

Applying these rules to the instant case, respondents' attack on the marketability of appellant's title was premature. Under the above authorities, and the lack of a contractual provision to the contrary, the marketability of appellant's title is determinable, not as of the date the contract was executed, but as of the time respondents tender that which, under the contract, would require appellant to transfer the title he agreed to convey. If appellant is able to convey the title contracted for when the time for the conveyance of the property arrives, i. e. "upon the receipt of the full payment of the purchase price, with interest," that is sufficient. The trial court's finding that appellant breached the contract by having encumbered title must therefore be reversed.

This court has considered the trial court's other findings of breach of the contract by appellant and we find them to be supported by substantial evidence in the record. These findings not being clearly erroneous, they will not be set aside by this court. I.R.C.P. 52(a).

Appellant urges that respondents waived these breaches of the contract by failing to timely object. From the record it appears that appellant consistently maintained before the trial court that he had not breached the contract. This court finds nothing in the record to indicate that the issue of waiver was presented to the trial court. Issues not presented to the trial court will not be considered on appeal. *Mitchell v. Siqueiros*, 99 Idaho 396, 582 P.2d 1074 (1978); *Bair v. Barron*, 97 Idaho 26, 539 P.2d 578 (1975); *Dunn v. Baugh*, 95 Idaho 236, 506 P.2d 463 (1973); *Willows v. City of Lewiston*, 93 Idaho 337, 461 P.2d 120 (1969); *Williams v. Havens*, 92 Idaho 439, 444 P.2d 132 (1968); *Frasier v. Carter*, 92 Idaho 79, 437 P.2d 32 (1968). Therefore this court will not address the issue of respondents' possible waiver of appellants breaches of the contract.

Appellant also claims that the trial court erred in its computation of damages arising from appellant's failure to make improvements as required by the contract. Appellant argues that the trial court "has rewritten the contract to include costs of improvements not contemplated by the parties."

Respondents concede that the cost of insulating the existing cooler and the cost of lining the walls with glazed block were misfigured and that appellant should be credited with a total of $633. We have reviewed the other damages which appellant assigns as error and find them to be supported by substantial evidence in the record. Not being clearly erroneous, the trial court's judgment in this regard is affirmed. I.R.C.P. 52(a).

Next, appellant argues that the trial court erred in concluding that appellant's breach of the contract justified respondents withholding a portion of the down payment. This court disagrees.

When a builder defaults on a construction contract, the other party may generally take possession of the work and complete it himself or employ another to do so, and charge the defaulting party with the necessary expense thereof. 17A C.J.S. Contracts § 512; also see Restatement of

Contracts § 346 (1932). In the instant case the contract provided that the improvements to be completed by the seller would "comply with applicable codes, rules and regulations of the State of Idaho, County of Minidoka, and the Department of Agriculture of the United States of America." The contract also required the buyers (respondents) to continue operating the meat packing plant and to do so in compliance with "all of the laws of the County, State and Federal Government . . . ." The record shows that appellant failed to obtain proper plans, inspections and building permits for the construction he contracted to do. There is also evidence that the improvements made by appellant failed to comply with any of the applicable state or county building codes and were constructed without proper engineering and design and without proper footings, foundation and supports to be structurally safe for use. When confronted with appellant's defective performance, respondents refused to tender the $25,000 installment payment due May 1, 1974. Instead, respondents tendered $15,000 on June 8, 1974, with a letter of explanation to appellant which stated in part:

> I am enclosing herewith a check from the Bledsoe Packing Company in the sum of $15,000,00. This amount is to be applied on the balance of the down payment of $25,000.00 which was to have been paid on May 1, 1974.

> The reason that payment was not made under the terms of the written agreement is because of your failure to make the remodeling in accordance with necessary electrical code and building code requirements in the area. Mr. Bledsoe has been required to employ H & K Electric to redo a substantial portion of the wiring that you have done.

> .    .    .    .    .

> Mr. Bledsoe accordingly is withholding the sum of $10,000.00 for completion of the work to electric code specifications and pursuant to all applicable County, State, and Federal Regulations for meat packing companies. . . .

The record also discloses that respondents expended $10,182.47 for work to be done by appellant under the contract in order to stay in business. This court concludes that the record is sufficient to sustain the trial court's ruling that respondents were justified in withholding the balance of the down payment until appellant complied with the terms of the contract.

Judgment affirmed in part, reversed in part and cause remanded for further proceedings in conformity with this opinion. No costs allowed.

SHEPARD, C. J., and DONALDSON, BAKES and BISTLINE, JJ., concur.